Argued June 5; affirmed June 30, 1931.

# MANSFIELD *v.* SOUTHERN OREGON STAGES

(1 P. (2d) 591)

*Alva W. Person, Jr.,* of Portland (Allan A. Bynon, of Portland, on the brief), for appellant.

*John Irwin,* of Klamath Falls (Oneill & Irwin, of Klamath Falls, on the brief), for respondent.

BEAN, C. J. The errors assigned on this appeal are based on the denial of defendant's request to with-

draw from the jury certain allegations of negligence contained in the complaint; the admission of certain testimony respecting measurements made at the scene of the accident by the surveyor, and the admission in evidence of a map of the scene of the accident.

■ The first assignment of error is predicated upon the refusal of the court to give to the jury the defendant's requested instruction to the effect that there is no allegation in the amended complaint that the condition of the brakes on defendant's motor bus was the proximate cause of or in any way brought about the accident. Turning to paragraph IV of the complaint we find it alleged that the brakes upon the stage were defective and insufficient to hold the stage upon the grade, or to control the motion or to slacken the speed of the stage to prevent collision, and incapable of bringing it to a stop in descending the grade. The complaint then further alleges that the horn and warning devices upon the stage were in a defective condition and could not be used; that without any warning by horn or otherwise, and the plaintiff being unaware that the stage was following the Star down the grade, the stage then being operated by a servant and agent of defendant

"In an attempt to rush ahead and pass said motor car did wantonly and wilfully with the grossest negligence and carelessness run said stage at a high and excessive speed against said motor car with great force and causing said motor car to be thrown forward and veered around with the rear end of said motor car eight feet from the edge of said precipice and to a complete stop with the motor therein not running; and that immediately thereafter and while said motor car was standing still with the motor therein not in motion, as aforesaid, that the said servant and agent of the defendant driving and in control of said stage at a high

and excessive rate of speed did, in a grossly negligent, wanton and wilful manner run said stage a second time against said motor car and knocked said motor car with this plaintiff in it off of said highway and over the edge and verge of said precipice throwing said car 318 feet below said highway and hurling the plaintiff over 100 feet below the edge of said highway at the aforesaid point and place at said precipice.''

After detailing plaintiff's injuries caused thereby, the complaint further alleged that by reason of the wilful and wanton acts and doings, together with the gross negligence and carelessness of the defendant, as aforesaid, the plaintiff seeks damages.

In regard to the matter of brakes, the court instructed the jury, in substance, that this matter could not be considered unless they found there was a defect in the brakes and that such defect, if any, either alone or in conjunction with some other act of negligence on the part of defendant, constituted one proximate cause of the collision and resulting injuries.

The language of the complaint is somewhat involved, and a construction thereof is not free from difficulty, but it appears that the brakes were alleged to be defective and further alleged that by reason of the acts of the defendant the plaintiff claimed damages. There was no motion to make more definite and certain, or a demurrer directed to the complaint. We think that after a verdict, the allegations in regard to the brakes should be construed as alleging negligence upon the part of defendant. Defendant, in this connection, also contends that there is no testimony to show that the brakes contributed to the accident.

██ It is a well-settled rule that, where the testimony in regard to an issue is conflicting, or where reasonable

men may draw different conclusions from the testimony, the matter should be submitted to a jury. The circumstances in regard to the accident were all detailed on the part of the plaintiff. The testimony tended to show that the first impact of the stage with the Star car sent the car a distance of about twenty-five feet, and after that the stage struck the car again sending it over the precipice. It might well be thought by the jury from these circumstances that, had the brakes been in proper condition, the driver of the stage would have stopped the same before it struck the car the second time. The plaintiff rode in the stage immediately after the accident and testified to the effect that the brakes were in a defective condition. We find no error in this respect.

■ The defendant also requested the court, in its charge to the jury, to withdraw from their consideration the charges in the complaint to the effect that the horn and warning devices upon the motor bus were in a defective condition and to disregard these charges and any evidence which may have been received relating to them. This question is closely akin to the one which we have just mentioned. The testimony tended to show that there was no horn or signal device on the bus, and of course that prevented the driver from sounding any warning with such horn or device, and when he approached the Star car, as the testimony indicated, there was no warning or signal given. These circumstances might have suggested to the jury that had there been a horn or other signal device upon the bus and the same had been sounded, warning the driver of the Star car, he would, as the law directs, have driven the Star car to the right and out of the way of the stage and the accident would not have happened.

Sometimes acts and circumstances speak louder than words. We think this was a question for the jury to consider and that there was no error in the court submitting the question to that body. As we understand the contention of the defendant, it is based wholly upon the fact that the want of a signal device was not indicated by the testimony to be the proximate cause, or to contribute to the accident.

■ Error is predicated upon the ruling of the court, over the objection of defendant, admitting testimony showing the distance from the place where the plaintiff claimed that the car was first struck and to where a person coming around the corner, or curve, west and ahead of the stage and car, could first be seen, which the witness stated was 410 feet, and also testimony as to the distance between the point where the car was first struck and the point of the second impact. The map of the highway and the surrounding area was drawn by a civil engineer, Mr. E. B. Henry. The plaintiff pointed out to him the place where the accident happened and also pointed out to him the wreck of the Star car down over the precipice, which still remained there, and the engineer drew a map of the highway, which is in evidence, taking as a basis a portion of the state highway commission map. Robert Longden was unconscious after the accident and did not remember the incident. The objection to the testimony seems to be that the engineer had no personal knowledge that the place on the highway, shown on the map, was the point where the accident occurred. The engineer did not pretend to know where it happened and did not so indicate by his testimony, but simply delineated the places upon the map that were pointed out to him by plaintiff, who apparently did know where the acci-

dent occurred and the points where the Star car was struck by the bus. Practically in this manner only could a map be drawn by an engineer unless he was present at the time or soon after the accident.

The defendant contends that the introduction of the map was hearsay. We find in the testimony of the defendant that its learned counsel introduced a map of the highway which was pointed out to him by the driver of the stage as the place where the accident occurred. This is practically the only way, in most cases, that a map of such a locality could be drawn by an engineer. As the engineer desired to leave the court room his testimony was taken and the map was introduced before the testimony of plaintiff was given, but afterwards the plaintiff swore that he pointed out to the engineer the place where the accident occurred and the point where the Star car was first struck by the bus and the point of the second impact, and also the wreck of the Star car down the precipice. The order of proof is regulated by the trial court in the exercise of its sound discretion: § 9-1901, Oregon Code 1930. There is no real question but what these maps represent the highway, and some surrounding features, at the place of the accident.

This map, as prepared by the engineer, contained two legends, one reading "First Point of Contact at the Station 107 x 85.0"; the other reading "Second Point of Contact, 25 Feet West of First Point." The main objection of the defendant to the map is on account of this legend. The dispute was that defendant claimed that the car in which plaintiff was riding was struck only once, while the testimony on the part of plaintiff was to the effect that it was struck twice. Mr. and Mrs. Hannah, according to their testimony,

were following the stage in an automobile at a distance of two or three hundred feet. They both testified, in effect, that the stage, after coming alongside the Star, turned suddenly to the right, its right front wheel striking the left rear wheel of the Star. The effect of the collision, as they testify, was to spin the Star around and send it ahead, after which the stage continued on and struck it a second time, sending it down the precipice.

■ We do not approve the introduction in evidence of the legend upon the map in question, but we fail to find that it is reversible error. A map or photograph introduced in evidence must be verified by some witness. The map in general was properly verified by the engineer who drew it as being a fair representation of a portion of the Ashland-Klamath Falls highway. The additional marks or legend shown on a map, but not verified in particular, "must similarly be sponsored," says Mr. Wigmore in 2 Wigmore on Evidence, § 794. The purpose of the red lines and arrows was to point out the places where the plaintiff claimed the car was struck. As far as we can discover in the record there was no reliance placed upon the statement or legend on the map as to the distance. The engineer testified as to the distance between the points and the plaintiff testified that he pointed out to the engineer where the impacts occurred. The map was introduced for the purpose of delineating certain features of the highway in order that the jury might better understand the testimony.

While it was offered as an exhibit, it was not introduced as substantive evidence: *State v. Remington,* 50 Or. 99 (91 P. 473), which was a criminal action, in which defendant was accused of an assault with intent

to kill. A map made by the county surveyor at the direction of the district attorney upon which appear black lines indicating certain objects, among other things, a "point where shells were found," and indicating the distance between certain points, was introduced in evidence. The engineer did not see the gun shells or bullet hole in a fence three and one-half feet above the ground. It was held, in substance, that the map of the premises under consideration, made by a disinterested and competent person, is admissible in evidence, though made by one who did not find sundry articles shown to have been picked up at points marked on the map, where the persons who did find the articles say the map was correct and shows truly the location they refer to in their testimony.

In *Walling v. Van Pelt*, 132 Or. 243 (285 P. 262), which was an action for injuries in a collision between a motorcycle on which plaintiff was riding and an automobile driven by defendant, a map made by a police officer showing skid marks of defendant's car to the left of the center of the street intersection, at which she made a left turn, where the officer was present at the scene of the accident a short time after it occurred, in an opinion by Mr. Justice McBride, was held to be admissible in evidence, not being a memorandum within section 9-1907, Oregon Code 1930. See 38 C. J., p. 990 and notes; *State v. Casey*, 108 Or. 386 (213 P. 771, 778, 217 P. 632); *State v. McKinney*, 31 Kan. 570 (3 P. 356, 360); *Jordan v. Duke*, 6 Ariz. 55 (53 P. 197, 200); *Deitchler v. Ball*, 99 Wash. 483 (170 P. 123).

A careful examination of the record leads us to believe that the case was fairly tried, and that the legend referred to upon the map did not change the

preponderance of the testimony. The evidence on the part of plaintiff was quite strong to the effect that there were two collisions between the cars, while that on the part of defendant depended upon the testimony of Hudson, the driver, to the effect that the bus struck the Star car only once.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

RAND and KELLY, JJ., concur.

ROSSMAN, J., dissents.

---

ROSSMAN, J. Dissenting. Being of the opinion that the map mentioned in the decision of the majority was inadmissible, and that an error of material consequence to the defendant was committed when it was received in evidence, I dissent from the foregoing, and avail myself of this opportunity of expressing my reasons. The map is prepared in professional style and is the handiwork of Mr. E. B. Henry, county engineer of Klamath county. His official imprint upon the map, together with other collateral matters, might readily have led the jury to believe that this plat was one of an official character. Its size is amply large so that when the map was placed upon an easel, as the evidence indicates it was, all the inscriptions upon it were plainly visible to the jury. Upon the solid red line which indicates the winding course of the highway are two asterisks of such size that each is of the width of the highway itself. Opposite these asterisks and pointing to them are two large red arrows which are easily the most distinguishing feature of the map. Alongside of one of these is the inscription, "First point of contact at Station 107 plus

85.0''. Alongside of the other arrow appear the words, ''Second point of contact 25' west of first point.'' As is evident from the prevailing decision, Mr. Henry was not present when the accident occurred and saw no marks upon the roadway or other imprints indicating where the impact occurred. The sole source of his information was the plaintiff himself. Approximately ten pages of the testimony, representing the direct examination of Mr. Henry, are consumed with his explanation of how the plaintiff pointed out to him the place where the defendant's vehicle first struck the one in which the plaintiff was riding and then struck the same vehicle again 25 feet from the place of the first impact. Continuing, the witness described the manner in which he prepared the map, the scale to which it was drawn, his measurements between the two points, and his comparison of his own notations with those of a map prepared by the state highway engineer. A total of 24 pages of testimony are consumed with his various explanations. In addition to the information aforementioned which appears upon the map, the document also indicates the degree of various angles in the roadway, directions, and distances between many points mentioned in the testimony. Thus the diagram is of a character to which the jury very likely resorted for the purpose of acquiring information concerning curves, distances, etc.

It will at once be observed both from the foregoing and from the decision of the Chief Justice that the inscriptions placed upon the diagram by the witness which indicated the point of the first contact and the point of the alleged second contact were of a hearsay character; that is, Henry could not vouch for that information but was recording information which he

swore was given to him by the plaintiff. Later, the plaintiff testified that he took Henry to this spot upon the highway and did, in fact, point out to him the two points of impact. But hearsay evidence does not cease to be of that character when the source of it takes the stand and corroborates the tale-bearer.

One of the principal issues in the case was whether the bus twice struck the car in which the plaintiff was riding. It will readily be observed that if the plaintiff could corroborate and substantiate his contention that two impacts occurred rather than one he thereby made the condition of the defendant worse and his own better.

No decision which has come to my attention authorizes the reception in evidence of plats containing inscriptions of the above character. I quote from 22 C. J., Evidence, p. 913, § 1114: "A map or plat having written memoranda thereon which may be taken by the jury as evidence should not be admitted." From *Hatcher v. Quincy Horse Ry. & Carrying Co.*, 181 Ill. App. 30, I quote: "The plat as offered was an endeavor to get before the jury the written testimony of the author of the plat that it might take such written evidence to the jury room, and is in the nature of a written argument upon the oral testimony. While a general plat would be proper (*Justen v. Schaaf*, 175 Ill. 45; *Wahl v. Laubersheimer*, 174 Ill. 338), the court properly sustained the objection because of the written memoranda, levels, and lines of vision thereon." *Walsh v. Walsh*, (1925) 1 D. L. R. 1192, was an action of trespass in which the plaintiff succeeded in having introduced in evidence a plan showing the disputed premises. Upon this plan were various inscriptions placed there by the deputy land surveyor who had

prepared the plan. Upon appeal it was held that the receipt in evidence of this document was in itself sufficient error to warrant the granting of a new trial. I quote: ''Counsel for the plaintiff urged that even if the evidence was objectionable a new trial should not be granted as no wrong or substantial injustice had been caused by its admission. I am unable to come to that conclusion. In fact, it seems to me that comments of this sort upon a plan signed by a duly qualified surveyor when placed before the jury may have had a very great influence in causing them to come to the conclusion which they arrived at.'' See to like effect: *Grant v. C. & N. W. R. Co.*, 176 Ill. App. 292; *Zinser v. Sanitary District of Chicago*, 175 Ill. App. 9; *Corning v. Dollmeyer*, 129 Ill. App. 188.

The decisions cited by the majority in support of their views fail them and, in fact, recognize the rule applied in the foregoing decisions. For instance, in *State v. Remington*, 50 Or. 99 (91 P. 473), no objection was made to the map on account of the inscriptions mentioned by the Chief Justice. I quote: ''The map was made by a competent and evidently disinterested person after a careful survey of the premises, and, though the plat contained certain written words, descriptive of existing objects, no objection was urged by defendant's counsel against the admission of the map in evidence on account of such memoranda.'' The decision then quotes with approval from *People v. Johnson*, 140 N. Y. 350 (35 N. E. 604), as follows: ''The learned trial judge was extremely careful about them. He required explicit proof of their accuracy, and, when descriptive words were marked upon them, stood ready to strike off any to which reasonable objec-

tion should be made." In addition, Mr. Justice Moore quoted from *Adams v. State*, 28 Fla. 511 (10 So. 106): "But for a person who knew nothing of these matters, except what he heard from others, to designate the movements of persons on the map, would be testimony of a secondary character and improper to be admitted." In *Walling v. Van Pelt*, 132 Or. 243 (285 P. 262), also reviewed in the decision of the majority, the map was made by the individual who saw the black marks upon the pavement. In other words, the author of that map saw everything represented by his drawing, and therefore passed on to the jury no hearsay information. The other decisions cited in the prevailing opinion shed no light upon our present problem.

The decision of the Chief Justice seems to recognize that the plat with the foregoing inscriptions upon it was inadmissible but holds that the error was harmless. It will be observed that in *Walsh v. Walsh*, supra, a similar argument was repulsed and I believe that the same should be done in this case. As previously indicated, the plat contained much valuable information as to distances, directions, angles, etc., to which the jury in all likelihood resorted. Since much of this data was not disputed by the defendants, it lent significance to the plat and likely caused them to regard it as a reliable friend. Next, the large red arrows standing out boldly before the jury each hour during the trial constantly voiced the plaintiff's contention that his automobile had been struck twice. Moreover, while other witnesses were excluded from the jury room, this silent but persuasive witness accompanied the jurors when they retired to deliberate, and remained with them until they returned with a verdict for the plaintiff. This document gathered to itself

increased persuasive powers as the jurors' recollection of the testimony of the other witnesses became dimmed. And, finally, as is suggested in 7 No. Car. Law Rev. 443, the things which the jury can see produce greater effect upon them than the spoken words of the witnesses.

The portion of the plat to which exception was taken is not a drawing of any physical objects. Apparently the two alleged impacts caused no imprints to be made upon the roadway, and hence no diagram could be prepared of that which was purely transitory. The portion to which the defendant objects was nothing more than a plat of plaintiff's hearsay statement. The engineer, by placing this inadmissible statement amid reliable information, compiled with technical, professional skill, exalted it into a persuasive force.

For the reasons above, I dissent.