Argued March 5, affirmed June 21, petition for rehearing
denied by opinion September 27, 1973

JONES, *Appellant, Cross-Respondent, v.* MITCHELL
BROS. TRUCK LINES ET AL, *Respondents,*
PURDY, *Respondent, Cross-Appellant.*

511 P2d 347
514 P2d 350

*Paul D. Clayton,* Eugene, argued the cause for appellant, cross-respondent. With him on the briefs were Luvaas, Cobb, Richards & Fraser and Douglas L. McCool.

*Richard Bryson,* Eugene, argued the cause for respondents Bostwick and Ryan. On the brief were Bryson & Robert and Calkins & Calkins.

*Darst B. Atherly* of Thwing, Atherly & Butler, Eugene, argued the cause and filed a brief for respondent Espelund.

*Wm. G. Wheatley* of Jaqua, Wheatley & Gardner, Eugene, argued the cause and filed a brief for respondents Mitchell Bros. Truck Lines, Plumley and Schamburger.

*Alonzo P. Stiner,* Portland, argued the cause for respondent, cross-appellant Purdy. With him on the briefs were Gary W. Lindberg and Veatch, Lovett & Stiner, Portland, and Gerald D. Gilbert, Eugene.

McALLISTER, J.

This is an action for damages for personal injuries resulting from an automobile accident. The trial court granted a nonsuit in favor of defendant Espe-

lund and the jury returned a verdict against the defendant Purdy in the amount of $236,809.28, and found in favor of the defendants Mitchell Bros. Truck Lines, Plumley, Schamburger, Bostwick and Ryan. Plaintiff appeals from the judgment of nonsuit in favor of Espelund and from the judgment on the verdict in favor of the other defendants except Purdy. Defendant Purdy cross-appeals from the judgment against him.

The accident took place on Highway 58 near Dexter Lake, between Oakridge and Eugene, where the two-lane highway runs east and west. On the evening of October 31, 1970, a loaded lumber truck belonging to defendant Mitchell Bros. overturned on the south side of the highway. The overturned truck came to rest in a field beside the highway, completely off the pavement and the shoulder. The truck driver notified defendant Schamburger of the accident. Schamburger, who was employed by Mitchell Bros. as its Safety Director, went to the scene early the next morning to conduct a salvage operation. He was accompanied by defendant Plumley, a safety supervisor employed by Mitchell Bros.

Schamburger, who was in charge of the salvage operation, determined that the truck should be unloaded and then be moved with a large crane. He arranged to have a large crane sent to the scene from Portland and then hired the defendant Bostwick, a local trucker, who owned a truck with a crane, to furnish and operate his truck in taking the bundles of lumber off the overturned truck. Defendant Ryan, a friend of Bostwick who had driven Bostwick's truck on prior occasions, accompanied Bostwick to the scene of the accident.

When they arrived at the scene, Bostwick's

truck was driven off the highway to a position near the overturned truck, and the unloading operations began. Schamburger and Plumley worked on top of the overturned load, setting cables around the bundles of lumber. Ryan drove Bostwick's truck, while Bostwick worked on top of the truck operating the self-loading device on the boom. After two bundles of lumber were removed, it was decided that Bostwick's truck should be turned around. Bostwick got down off the top of the truck, and Ryan backed the truck in a westerly direction parallel to the highway until he came to a private drive. Turning there, he drove the truck directly across the highway into a private road which entered the highway from the north at a point about 200 feet west of the overturned Mitchell Bros. truck. He stopped there to wait for traffic on the highway to pass so that he could back into the highway and turn around. The truck was then facing north, away from the highway, with the boom extending to the rear of the truck toward the highway. Estimates varied as to how near the truck was to the pavement. The private road in which the truck was stopped sloped down away from the highway. Ryan, instead of using the brakes to keep the truck from rolling down the incline, placed the truck in reverse gear and used the clutch to keep the truck from either rolling down the hill or backing onto the highway. This caused the truck to move back and forth slightly from time to time while Ryan waited for the traffic on the highway to pass.

While Ryan, in Bostwick's truck, waited for a break in the traffic, defendants Espelund and Purdy drove toward the scene from the east with Espelund's vehicle in the lead. The highway was straight and visibility was good. Espelund and Purdy could see

the scene of the salvage operation after they came over the crest of a hill about a third of a mile to the east. As Espelund drove down the hill he noticed the overturned truck beside the highway and began to slow down without using his brakes. Purdy, who had been following Espelund at a distance of five or six car lengths and a speed of 50 to 55 miles an hour, noticed after he crested the hill that Espelund was slowing down. Purdy accordingly began to reduce his own speed, using his brakes lightly. Espelund, having slowed down considerably, passed the overturned truck and the road where the Bostwick truck was sitting. Following Espelund, Purdy passed the overturned lumber truck and was approaching the Bostwick truck when, according to his testimony, he saw the truck suddenly move toward the highway. Alarmed, Purdy quickly put on his brakes. He testified:

"* * * about this time I saw this red logging truck move toward the highway, and it scared me to death, and I just hit my brake * * * slammed on my brake * * *."

Purdy's car began to skid, and slid across the highway into the eastbound lane of traffic where it collided, about 250 feet west of the Bostwick truck, with the eastbound car in which plaintiff was riding. Plaintiff's husband, who was driving, had no warning of danger until he saw Purdy's car, already in the eastbound lane, sliding sideways toward him. Espelund, in the meantime, heard the squeal of Purdy's tires, looked in his rearview mirror and saw Purdy's car sliding, and accelerated quickly. He was some distance down the highway by the time of the collision.

There is conflicting evidence as to whether the

Bostwick truck actually moved. Purdy testified that he saw it move, while other witnesses testified that the truck was still but the boom was swinging, while still others testified that they saw no movement at all. In any event, the truck did not move onto the highway, but remained at all times in the private roadway.

Plaintiff's case against all the defendants, except Espelund, who was granted a judgment of nonsuit, was submitted to the jury. The jury held Purdy liable, and exonerated all the other defendants.

Plaintiff claims the trial court erred in granting defendant Espelund's motion for an involuntary nonsuit, and argues that the question of Espelund's negligence should have gone to the jury. Plaintiff charged that Espelund negligently:

"(1) Slowed his vehicle without giving any plainly visible proper signal of his intent to do so.

"(2) Failed to keep and maintain a proper lookout for other vehicles which were on or entering upon said highway.

"(3) Slowed his vehicle suddenly without first ascertaining that the movement could be made in safety."

We have found no evidence that Espelund was in any way negligent in slowing his vehicle. He testified that he reduced his speed gradually as he approached the overturned truck and the Bostwick truck. Purdy's testimony is in accord, and also shows that Purdy was aware of Espelund's decrease in speed. Espelund evidently gave no signal of his intention to slow down, but the applicable statute requires a signal of such an intention only in the case of a sudden decrease in speed. ORS 483.126 (3). There is no evidence that

Espelund slowed his vehicle suddenly or of any other circumstance which would have required him to give a signal.

■ There is evidence that as Espelund passed the overturned truck he was looking toward the salvage scene, and that he did not check his rear view mirror between the time he came over the top of the hill and the time he heard Purdy's attempt to stop. The jury could have found that he was keeping an inadequate lookout. There is, however, no evidence that his failure to keep a proper lookout played any part in causing the accident. There is nothing to suggest that the position of his vehicle either caused Purdy to· slam on his brakes, or interfered in any way with any attempt by Purdy or by plaintiff's husband to avoid the collision. The trial court correctly concluded that the evidence did not show any negligence by Espelund which could have been a cause of plaintiff's injuries. The judgment of nonsuit is affirmed.

The trial court instructed the jury, in language which is set out in full below,[1] that if an unforesee-

---

[1]
"There is known to the law the concept of intervening causes which may interrupt the chain or flow of a proximate cause situation, and I will define that to you.

"You are instructed that an intervening cause is a new and independent force which breaks the connection between an original cause and an injury.

"If you find from the evidence and under the instructions of the Court that there was such an intervening cause of the plaintiff's injuries if any, and that such intervening cause could not have been foreseen by the person responsible for the original cause if any, using reasonable care under the same or similar circumstances, then such person responsible for said original cause if any is not liable for such injuries.

"You are further instructed that an injury that is not a natural consequence of negligence and which would not have resulted from it but for the interposition of some new inde-

(Continued on page 522)

able intervening cause "breaks the connection" between an original cause and an injury, then the person responsible for the original cause is not liable for the injury. Plaintiff contends that the facts of this case do not justify the submission of the question of intervening cause to the jury.

Plaintiff's complaint as submitted to the jury alleged that the various defendants were negligent in three general areas. It was alleged that there was a negligent failure to warn approaching motorists of the hazards created by the salvage operation, that the operation of the Bostwick truck was negligent, and that Purdy drove his vehicle negligently. In contending that there was no issue of intervening cause for the jury plaintiff argues, in effect, that Purdy's actions were, as a matter of law, a foreseeable result of the other defendants' actions. She relies on *Hills v. McGillvrey,* 240 Or 476, 402 P2d 722 (1965), *Dewey v. A. F. Klaveness & Co.,* 233 Or 515, 379 P2d 560 (1963) and *Eitel v. Times, Inc.,* 221 Or 585, 352 P2d 485 (1960). In each of these cases the defendant was contending that an intervening cause insulated it from liability as a matter of law. In each case, we held that the issue was a proper one for the trier of fact. See, also, *Kuhns v. Standard Oil Co.,* 257 Or 482, 493-495, 478 P2d 396 (1970); *Babler Bros. v. Pac. Intermountain,* 244 Or 459, 464, 415 P2d 735 (1966).

---

(Continued from page 521)

pendent cause that could not have been anticipated is not actionable.

"If the negligence claimed to be the cause of the injury is shown to be interrupted by a separate independent intervening act of a third party negligently or otherwise, then the chain of causation is broken and the negligence complained of becomes a remote contingency which can no longer be considered the proximate cause of the injury."

■ In the present case the immediate cause of the accident was Purdy's action in abruptly slamming on his brakes even though there was no obstruction in the highway. The jury could have found that he put on his brakes because he thought that Bostwick's truck, which was parked entirely off the highway, had moved back toward the highway when in fact it had not. It could also have found that if the truck did move, the movement was so slight that it was not likely to alarm motorists on the highway. We cannot hold as a matter of law that any of the other defendants were bound to foresee that a motorist would react excessively and inappropriately, as the jury may have found that Purdy did. The question of foreseeability was properly submitted to the jury for its determination.

■ Plaintiff, in this court, criticizes the form of the instructions on intervening cause, and complains that their application should have been limited to certain defendants. These objections were not raised in the trial court, where plaintiff's exception was to the giving of any instruction on this issue. They will not be considered here for the first time. *Lilley v. Gifford Phillips, Inc.,* 210 Or 278, 281-282, 310 P2d 337 (1957); *Eleanor Walls v. Clark,* 252 Or 414, 420, 449 P2d 141 (1969).

The plaintiff offered in evidence the Foreword to a Drivers' Manual published by Mitchell Bros. Truck Lines for the guidance of its drivers and other employees and the rejection of this exhibit is assigned as error. It was represented to the court that Schamburger was aware of the contents of the Foreword and that one of his duties with Mitchell Bros. was maintaining and updating the Drivers' Manual. The exhibit was offered to show that "Schamburger had

superior knowledge and judgment" and that he was personally aware that motorists sometimes make mistakes or act recklessly or absent-mindedly as stated in the Foreword.

■ The trial court permitted the plaintiff wide latitude in proving Schamburger's expertise in highway safety, including questions about his attendance at safety seminars, his familiarity with truck safety literature, and his responsibilities in connection with the safety operations for a large fleet of trucks, and with accident salvage operations and investigations. Plaintiff was also allowed to show that Schamburger had written a safety manual. The court, however, properly excluded statements from the safety manual itself which might have created doubt in the minds of the jury as to which standard of care was applicable to Schamburger, the law, as explained to the jury by the court, or the instructions contained in the Drivers' Manual. We think there is no merit in this assignment of error.

The plaintiff offered in evidence a statement made in a deposition by defendant Schamburger to the effect that if he had known that Ryan intended to drive the Bostwick truck across the highway to turn it around he "would have taken some precautions in connection with it," and specifically that he would have used a flagman. Plaintiff contends in this court that the offered evidence "was relevant to show the failure on the part of defendant Schamburger to properly supervise the activities of the driver of the red Mack (Bostwick) truck."

Since the Bostwick truck had crossed the highway and was standing in a private driveway on the north side of the highway when the Espelund and

Purdy vehicles approached from the east, and the vehicle in which plaintiff was riding approached from the west, we think the absence of a flagman when the Bostwick truck crossed the highway was irrelevant. Schamburger, in the rejected testimony, did not mention any need for a flagman while the truck was sitting in a driveway off the highway.

■■ The jury evidently determined that Ryan was not guilty of any negligent conduct which was a cause of the accident.[2] Even if Schamburger's statements could have been understood to indicate the need for additional precautions while the truck was in the driveway, we do not see how their exclusion could have been prejudicial under the circumstances. If, as the jury found, the operation of the Bostwick truck was not a cause of the accident, then Schamburger's failure to supervise its operation and to take safety precautions in that regard could not have been a substantial factor in causing plaintiff's injuries.

In the trial court the plaintiff contended that Schamburger's statement tended to prove that Schamburger, acting for Mitchell Bros. had the right to control the salvage operations. On that question the record was replete with evidence that Schamburger was in charge of all operations at the scene, including testimony by Schamburger himself. In fact, the trial court instructed the jury that Ryan was the agent of Mitchell Bros. and was acting within the scope of his employment at the time of the accident. The exclusion of this evidence could not have been prejudicial to

---

[2] After a jury verdict, we are required to view the evidence in the light most favorable to the prevailing party. Reed v. Wilson, 244 Or 388, 390, 418 P2d 501 (1966); McPherson v. Cochran, 243 Or 399, 401, 414 P2d 321 (1966).

the plaintiff on the issue of Schamburger's right to control Ryan.

■■ Plaintiff's other assignments of error do not require extended discussion. The trial court's instruction on excuse for violation of a statute[⑧] is consistent with our recent decisions in *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972) and *Freund v. DeBuse,* 264 Or 447, 506 P2d 491 (1972). The refusal to let a witness answer a question about customary procedures when heavy equipment is being moved on or near highways cannot be reviewed, as plaintiff made no offer of proof. *State v. Jenkins,* 246 Or 280, 424 P2d 894 (1967). Other adverse rulings on evidence do not involve reversible error.

Defendant Purdy, in his cross-appeal, also contends that the trial court erred in submitting the question of intervening causes to the jury. Purdy argues that, as a matter of law, his action in slamming on his brakes was a natural and foreseeable consequence of the negligent movement of the Bostwick truck, and could not be an independent intervening cause. As we have pointed out above, in connection with plaintiff's appeal, this contention is not well taken.

■■ Purdy requested, and the trial court refused to give, an instruction on the emergency doctrine. Our recent cases hold that this instruction is to be avoided, and that rarely, if ever, will a failure to give the instruction constitute reversible error. *Ballard v. Ricka-*

---

[⑧] "You are instructed that while the violation of an operational statute is negligence in and of itself, such negligence if any may be excused by showing that the statute could not have been complied with by the exercise of reasonable care under the circumstances then and there existing."

*baugh Orchards, Inc.,* 259 Or 200, 207, 485 P2d 1080 (1971); *Rankin v. White,* 258 Or 252, 256, 482 P2d 530 (1971); *Evans v. General Telephone,* 257 Or 460, 466-467, 479 P2d 747 (1971). In the *Evans* case we pointed out that the usual instructions on negligence sufficiently cover "what a reasonably prudent person would do under all circumstances, including those of sudden emergency." 257 Or at 467. In the present case, the trial court instructed the jury adequately on negligence, and the instructions included the caution that conduct is not to be judged in light of hindsight. A separate instruction on conduct in an emergency was not necessary.

■ Purdy also assigns as error the following instruction:

"I instruct you that a finding cannot be based upon evidence which is opposed to established physical fact."

Our attention has not been called to any evidence which is in direct conflict with any established physical fact. The instruction was, under the circumstances, abstract and should not have been given, but was not reversible error. The instruction was general and cautionary in nature, and did not call attention to any particular evidence. We find no prejudice to Purdy. See *Sturm v. Smelcer,* 235 Or 251, 255, 384 P2d 212 (1963).

Finally, Purdy argues that the trial court erred in admitting into evidence Exhibit C, which was offered by defendant Mitchell Bros. Exhibit C is an engineer's scale drawing of the accident scene on which the positions of the overturned truck, the Bostwick truck, and the Purdy and Jones vehicles at the point of collision were marked. The drawing shows the Bost-

wick truck in the private drive and well off the paved portion of the highway. The engineer testified that he drew the Bostwick truck in that position on the basis of information furnished to him by other persons. There was conflicting evidence as to the precise position of the Bostwick truck, including evidence from which the jury could have found that it was closer to the paved portion of the highway, and that the boom extended to or slightly over the pavement itself.

The following rule is stated in 3 Wigmore on Evidence 239-240, § 794 (Chadbourn rev. 1970) :

> "A map or diagram cannot be received *anonymously; it* must be *'verified' by some witness.* So also specific additional marks or legends, borne on the document but not verified in particular, must similarly be sponsored. * * * The witness thus standing sponsor must be *qualified by observation* * * * to speak of the matters represented in the picture. * * *"

In *Mansfield v. Southern Oregon Stages,* 136 Or 669, 1 P2d 591 (1931) that rule was substantially, although not literally, complied with. The case involved a collision between an automobile and a bus. Plaintiff introduced in evidence a map, drawn by an engineer, which depicted the section of the highway where the accident took place, and which also showed the places where plaintiff claimed that two separate impacts occurred. Defendant claimed that there had been only one impact. The map was admitted upon the basis of the testimony of the engineer, who had no personal knowledge of the place or places of impact. Later, however, the plaintiff testified that he had pointed out to the engineer the specific locations shown on the map. It was held that there was no reversible error, although the court noted its disapproval of certain

labels and arrows on the map pointing out the alleged points of impact.

■ In the present case, no witness testified that the map accurately portrayed the position of the Bostwick truck, nor does it appear that the map was prepared under instructions furnished by any person with first-hand knowledge of the facts. It appears, therefore, that an important feature of the map, involving a fact which was in dispute, was not properly verified by any witness. The exhibit should not have been admitted into evidence.

■ Under the circumstances of this case, however, the error does not justify reversal. The jury was in the courtroom and heard the parties' extensive arguments concerning the admissibility of this exhibit. After hearing this argument, the jury could not have been under the impression that Purdy conceded the truck's position to be accurately shown on the map, or that the engineer who prepared it had any special knowledge of the facts. Defendant later introduced in evidence another drawing showing the truck closer to the highway with the boom extending out to the edge of the pavement. The jury was thus furnished with a visual presentation of Purdy's version of the facts as well as that of Mitchell Bros., and could not have been misled into giving any special weight to the position of the Bostwick truck as shown on Exhibit C.

As we find no reversible error, the judgments of the trial court are affirmed.

DENECKE, J., specially concurring.

As Mr. Justice McALLISTER states, at trial the plaintiff did not object to the form of "intervening cause" instruction, and, therefore, the majority does not consider whether it is in correct form.

In an effort to dissuade future use of such an instruction, I offer the opinion that the instruction is not in proper form. It incorporates terms and phrases which have been in use for years but which, in my opinion, are completely unintelligible to a jury.

TONGUE, J., dissenting in part.

In my opinion, plaintiff is entitled to a new trial as against defendants Mitchell Bros. Truck Lines and Schamburger, its Safety Director, because of what I consider to have been error in excluding plaintiff's offer on trial of the following testimony by defendant Schamburger at the time of his pretrial deposition:

"Q If you had known the red truck was going to go across the road, you would have taken some precautions in connection with it?

"A Certainly. You don't cross the road in that manner without taking precautions.

"Q Did this constitute a safety hazard, in your opinion, when the truck crosses like that?

"A I think it does in the manner where you are going right — like I say, I didn't know there was a driveway over there, but after, I could see where I figured he had backed in there and pulled around, but it constitutes a safety hazard any time you cross the main portion of the road with a boom truck.

"Q If you had known he was going to do that, you would have put up a flagman or signs?

"A I would have had people out there. I would have flagged him myself if I had known that this is what his intentions were of doing, I guess.

"Q There was sufficient people there and sufficient equipment to do that job?

"A I could shut down a job any time for reasons of safety to protect the general public, yes, and I would have done it in this case.

"Q  And that's your job?
"A  Yes, sir, it is."

Plaintiff contends this evidence was relevant to show the failure on the part of defendant Schamburger to properly supervise the activities of the driver of the red Mack truck and was admissible as an admission that he was negligent in failing to supervise the activities of the driver of the red Mack truck.

It is contended by the defendants in their brief, however, that:

"The questions and answers set out in plaintiff's Brief under this assignment of error are from defendant Schamberger's deposition and involve only the truck 'crossing the road.' *Schamberger merely stated that when a truck crosses the road, or is going to back off the road, it is a good idea to have a flagman out.* But, his testimony did not state that when a truck is stopped, off the road, in a driveway, and while it is waiting for a vehicle that can see the truck for a distance of 1,600 feet, that flagmen should be present. That is exactly the situation presented in this case. The accident involving plaintiff did not happen while the truck was crossing the road. *The truck did not present any hazard* and did not block either lane of traffic, and was clearly visible to everyone in its position by the highway. *There is nothing in the testimony of Schamberger,* as set out in the Third Assignment of Error, *which suggests that there should be a flagman available when a truck is merely sitting in a driveway."* (Emphasis added)

In reply, plaintiff contends that:

"Again, defendant takes a narrow view of the salvage operation. The fact (if indeed it is a fact) that the truck was temporarily stopped does not relieve those in charge of the duty of supervision. If in a salvage operation where many vehicles are

involved, they are all off the road at a given time, the duty to supervise and warn does not cease until such time as the vehicles again go upon the roadway. Rather, the entire salvage operation must be viewed as a continuous operation with the duties of the parties continuing over the entire period of time."

I am inclined to agree. It may be that the truck was not actually crossing the highway at the time of this accident. As stated by the majority, however, the rear of the truck was then facing the highway, with its boom extending to the rear of the truck and toward the highway. As also stated by the majority, there was testimony that the truck was on an incline; that to keep the truck from rolling down the incline the driver kept operating the clutch in a manner that caused it to move back and forth slightly from time to time as he waited for the traffic on the highway to pass.

There was also testimony that the rear wheels of the truck were "a foot or two" from the edge of the pavement. The boom of the truck extended beyond the rear of the truck and had a bucket on the end, which was swinging back and forth.

Finally, as stated by the majority, defendant Purdy testified that as he was approaching the truck he saw it suddenly move toward the highway; that it "scared me to death" and he "slammed on my brake," causing his car to go over the center line and into the path of the car in which plaintiff was riding.

Under this testimony I cannot accept the contention by these defendants that "[T]he truck did not present any hazard * * *" and that "[t]here is nothing in the [offered] testimony of Schamburger * * * which suggests that there should be a flagman avail-

able when a truck is merely sitting in a driveway."
The majority appears to agree with that contention
as the basis for its decision on this issue. Thus, the
majority states that:

> "*Since the Bostwick truck had crossed the high-
> way and was STANDING in a private driveway
> on the north side of the highway when the Espelund
> and Purdy vehicles approached* from the east, and
> the vehicle in which plaintiff was riding approached
> from the west, we think the *absence of a flagman*
> when the Bostwick truck crossed the highway *was
> irrelevant. * * *"* (Emphasis added)

On the contrary, I am of the opinion that from
the offered testimony of defendant Schamburger the
jury could reasonably have found that as Purdy ap-
proached the scene this truck, with its boom swinging
out behind, backed suddenly toward the highway to a
point at which its wheels were within "a foot or two"
of the pavement, with the swinging boom extending
even further; *that Purdy was led to believe that the
truck was then in the process of starting across the
highway* and that under these circumstances the truck
did in fact present a hazard to oncoming traffic, in-
cluding defendant Purdy.

I am also of the opinion that the jury could rea-
sonably have found from the offered testimony of
defendant Schamburger that under these circum-
stances a flagman should have been available and
that these defendants were negligent in failing to
provide a flagman on the highway at the rear of
the truck to either stop approaching motorists, in-
cluding defendant Purdy, in the event that the truck
was, in fact, about to back out upon the highway, or
to signal them that it was safe to proceed, in the
event that the truck was not going to back out upon

the highway until such approaching motorists had passed.

Under these circumstances it is my belief that plaintiff was prejudiced by the exclusion of this evidence. Because the jury found in favor of defendant Bostwick does not, in my view, require a contrary result, as held by the majority. In my opinion, that fact is not sufficient to overcome the well established presumption that this error was prejudicial.

In addition, it is my view that although this evidence was primarily relevant upon the question of the negligence of defendants Mitchell Bros. and Schamburger, it was also relevant upon the question whether, in the absence of a flagman, defendant Bostwick was negligent in conduct which led Purdy to believe that he was starting to back his truck upon the highway. Had the jury been informed the admitted importance of a flagman during this operation, it might well have declined to return a verdict in favor of defendant Bostwick, as well as defendants Mitchell Bros. and Schamburger.

For these reasons I dissent from that portion of the opinion which holds that the trial court did not err in excluding this testimony.

## ON PETITION FOR REHEARING

Holman, J., did not participate in this decision.

Douglas L. McCool and Paul D. Clayton of Luvaas, Cobb, Richards & Fraser, Eugene, for petitioner.

No appearance contra.

O'CONNELL, C. J., dissenting.

I would grant the petition for rehearing. There is a basis for finding that the trial court erred in granting an involuntary nonsuit in favor of defendant Espelund. There was substantial evidence from which a jury could have concluded that Espelund's conduct was a contributing cause of the accident. During Purdy's cross-examination, the following occurred:

"Q. I want to ask you whether when you talked to the policeman telling him how this accident happened, whether you stated as follows:

" 'I was westbound on Highway 58 at approximately 50 to 55 miles an hour. Suddenly the unit in front of me slowed because of a truck that was tipped over on its side in the shoulder of the highway. The car in front of me applied its brakes, but I lost control. No, let's see, I applied my brakes, but lost control. I slid across the center line and into the eastbound land hitting the eastbound car.'

"Q. Do you remember of saying that to the officer?

"A. If it is written there, I probably did, but in my condition, then I can't * * * I couldn't think straight anyway."[1]

If Purdy's out-of-court statement to the police officer is admissible, there is evidence to show that

---

[1] During the testimony of the police officer in whose report the statement appeared, the statement was objected to and excluded as to defendant Espelund. When the statement was again read during Purdy's testimony, no objection was made.

Purdy lost control of his vehicle because Espelund slowed suddenly, thus establishing Espelund's conduct as a contributing cause of the accident.

The majority apparently have decided that the statement is inadmissible on the ground that it is hearsay. I am unable to understand why an out-of-court statement made by a person who is now a witness and therefore is subject to cross-examination concerning the statement should not be admissible. Those who have made the most careful study of the law of evidence, including Wigmore, McCormick, the drafters of the Uniform Code of Evidence, the drafters of the Model Code of Evidence, and others, share my view.[2]

Purdy's out-of-court statement was not consistent with his statement on the stand. The jury should be permitted to decide which of these statements is the more credible and rely on it in reaching a decision.

If my position is not in accord with our previous holdings, I would simply say that it is time to overrule them.[3] It has been argued that Purdy's uncertainty as to whether he made the out-of-court statement renders it too insubstantial to consider. The answer to that argument is that the weight of evidence has always been a question for the jury.

The petition for rehearing should be granted. Tongue, J., also dissents.

---

[2] *See* 3A Wigmore on Evidence 996 (Chadbourne rev. 1970); McCormick on Evidence, 601–604 (Cleary rev. 1972); 9A ULA Rules of Evidence, Rule 63 (1) (1965 draft); ALI Model Code of Evidence, Rule 503 (b) (1942). See also, DiCarlo v. United States, 6 F2d 364 (2nd Cir 1925) (L. Hand, J.).

[3] *Cf.*, Madron v. Thomson, 245 Or 513, 419 P2d 611, 423 P2d 496 (1966); McKinnon v. Chenoweth, 176 Or 74, 155 P2d 944 (1945).