Argued April 1, Affirmed November 6, 1975, petition for
rehearing denied by opinion January 22, 1976
See 274 Or 109. See also 266 Or 513

JONES, *Appellant, v.* MITCHELL BROS.
TRUCK LINES ET AL, *Respondents.*

541 P2d 1287

*Arthur C. Johnson,* Eugene, argued the cause for appellant. With him on the briefs were John B. Arnold, and Johnson, Johnson & Harrang, Eugene.

*Richard A. Roseta,* Eugene, argued the cause for respondents. With him on the brief were William G. Wheatley, and Jaqua & Wheatley, Eugene.

HOLMAN, J.

Plaintiff brought an action for personal injuries resulting from a collision between a motor vehicle he was operating and a vehicle operated by a third party, Purdy, who is not now a party to this proceeding. Plaintiff claims defendants' negligence caused the vehicle operated by Purdy to go out of control. Plaintiff also brought an action against the same defendants for his loss of consortium resulting from injuries to his wife in the same accident. The cases

were consolidated for trial and appeal. Judgment was entered for the defendants in each case upon the basis that plaintiff was collaterally estopped from litigating the issues of defendants' negligence. Plaintiff appeals.

Plaintiff's wife was incapacitated by her injuries. Plaintiff was appointed her guardian and, as such, instituted a previous action against these same defendants and others to recover for her injuries and approximately $37,000 in medical bills. That action resulted in a verdict and judgment in favor of plaintiff's wife against Purdy and in favor of all other defendants including the present defendants. These proceedings were affirmed upon appeal. *Jones v. Mitchell Bros.*, 266 Or 513, 511 P2d 347, 514 P2d 350 (1973).

Because of the judgment entered against Purdy and in favor of the present defendants, it is apparent that in the action of plaintiff's wife the jury found that she suffered injuries as a result of the accident but that the defendants were absolved from liability therefor either because they were not negligent or because any negligence of which they may have been guilty was not a cause of the accident. The trial court in the instant case held that these determinations precluded plaintiff from contending that defendants were guilty of negligence which caused plaintiff's injuries and damages.

Although plaintiff was a party to the prior suit, he contends he cannot be precluded from relitigating the issue of defendants' negligence because he prosecuted his wife's action in a representative capacity as her guardian, whereas he brought the present suit in his individual capacity to enforce his personal rights. He relies on Restatement of the Law of Judgments § 80(2), which provides:

"(2) Where a judgment is rendered for or

against a person who is a party to the action solely in a representative capacity or who is otherwise acting solely for the benefit of another, of which the other party to the action has notice, the rules of res judicata do not apply in a subsequent action in which he is a party and is acting solely on his own account, except where he takes a position in the subsequent action inconsistent with that which he took in the first action."

The American Law Institute is in the process of compiling Restatement (Second) of the Law of Judgments to reflect changes in the law since the promulgation of the original Restatement. Section 80(2) of Tentative Draft No. 2, Restatement (Second) of the Law of Judgments (April 1975), substantially retains the rule of the original Section 80(2). It states at 16:

"(2) A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."[1]

■ The purpose of Section 80 is to safeguard the integrity of the actions of persons who are functioning in a representative capacity. In conducting an action or defense a representative should have regard only for the interests of the beneficiary and should not be hampered by being required to consider how his own interests might be affected in subsequent proceedings.[2]

---

[1] The phrase "bound by and entitled to the benefits of the rules of res judicata" refers to the rules of issue preclusion as well as to the rules of claim preclusion. Comment *a.*, § 78, Tentative Draft No. 2, Restatement (Second) of the Law of Judgments.

[2] Comment *b.*, § 80, Restatement of the Law of Judgments, and Comment *a.*, § 80, Restatement (Second) of the Law of Judgments.

Plaintiff's position comes within the literal terms of the provisions of Section 80(2) because he was serving in a representative capacity. For cases setting forth substantially the same rule, see *Crow v. Abraham*, 86 Or 99, 108-09, 167 P 590 (1917), and cases annotated under the heading, *Judgment for or against person in fiduciary capacity as res judicata for or against him in his individual or a different fiduciary capacity, or vice versa*, 170 ALR 1180 (1947). However, the rationale for the rule would seem to have no application to the present factual situation.

An examination of both the wife's and the husband's case discloses that the allegations of negligence in each are substantially identical and that plaintiff's personal interests are not adverse in any respect to those of his wife's. The trial judge, who was well aware of its significance, had the following colloquy with plaintiff's attorney:

"THE COURT: Well, assuming that may be so as a general proposition, is there any instance in this case where there's a suggestion that the decision was made for the benefit of his wife's claim and would be adverse in any way to his own claim?

"MR. JOHNSON: No. Other than the fact that he would presumably follow the attorney's advice that he hired. * * *."

■ We find it difficult to conceive of reasons why plaintiff should not be estopped in accordance with generally accepted principles of collateral estoppel, though Section 80 of both the Restatement and the Tentative Draft seem to prohibit it. In both the plaintiff's case and his wife's case it was necessary to prove that defendants were negligent and their negligence caused the accident in which plaintiff and his wife claimed to have been injured. If the wife's action were tried first, as was the case, and the wife recovered,

plaintiff could preclude defendants from litigating the issues of defendants' negligence as a cause of the accident because those issues had already been decided against them in the wife's case. *Bahler v. Fletcher,* 257 Or 1, 474 P2d 329 (1970). This benefit to plaintiff would force plaintiff to use every effort to win and thus alleviate any chance that he would make any choices which would be inimical to the wife's interests. In addition, plaintiff, as guardian, has complete control of his incompetent wife's case. With complete control in plaintiff, and with the benefit to him of the application of estoppel to defendants if the wife's case is won, there is no reason to fear he will not use his best efforts to win his wife's case, and therefore no reason for the application of the rule of Section 80 of the Restatement.

On the other hand, in case the wife's action were lost on the basis of either negligence or causation, and if estoppel were applied to plaintiff and he thus would be precluded, plaintiff would have additional reason for taking every means to win his wife's case because he suffers a detriment if he loses. Thus, it would appear that the application of estoppel to plaintiff will safeguard the wife's position rather than place her in a situation of vulnerability, and the application of the rule of Section 80 is made even more inappropriate in view of this factor.

If the plaintiff's own case is tried first, his wife has no control of his case, and estoppel by judgment has no application to her.

Plaintiff had every reason and every opportunity to establish defendants' negligence as a cause of the accident in his wife's case. She was not subject to be defeated by the issue of contributory negligence as was he because she was a passenger in and not the operator of the vehicle in which she was riding. She was an object of pity in that she was rendered an in-

competent as a result of the accident. Recognizing that Section 80 is for the representative's protection as well as his ward's, plaintiff, when given the opportunity, could point to no diversity of interest between his case and that of his wife's which was adverse to the subsequent prosecution of his claim. He had a completely fair opportunity to establish the issues which were necessary to the favorable conclusion of both cases. Every reason for the application of estoppel exists with no risk to either his wife's case or his own.[9]

■■ Plaintiff contends that the policy expressed in ORS 126.035 prohibits his being collaterally estopped. This statute favors the appointment as guardian of close relatives by marriage or by blood. He argues that if collateral estoppel is a potentiality in a situation like the present, no relative could ever take the chance of acting as guardian because by so acting he might prejudice his own case and, thus, the objective of the statute would be defeated. The policy expressed in the statute is merely one of the considerations of which cognizance must be taken in determining whether preclusion should be applied to the facts of this case. Where the guardian has a personal interest and the incentive to litigate fully, where the interests of the ward and the guardian are not divergent in any respect, and where control by the guardian is complete, all resulting in a full and fair opportunity to litigate the issues, we believe the public's interest in judicial economy and the other bases for issue preclusion should predominate.

The judgments of the trial court are affirmed.

---

[9] Usually, plaintiff also would have a financial interest in the outcome of his wife's case because of his responsibility for her support and her medical and hospital bills, which interest could be a basis for estoppel. However, there is no proof from which we can say he would be so responsible because, for all the evidence shows, his wife may have had adequate funds for these purposes and completely paid her own bills. The burden of proof in showing such an interest is upon defendants, who must prove the facts necessary to an estoppel.

TONGUE, J., dissenting.

The basic issue presented for decision in this case is the question of how this court can properly reconcile two important considerations of public policy: (1) the need for a uniform and logical application of the rules of collateral estoppel, so as to prevent the needless relitigation of issues which have been previously tried and determined, with (2) the need to protect the interests of incompetent persons by the enforcement of a rule that will assure, insofar as is possible, the integrity of the fiduciary relationship between a guardian and his ward.

Defendant, in contending that the principles of collateral estoppel should be applied in this case, relies upon Restatement of Judgments § 84 (1942), among other authorities. Plaintiff, in contending that the public policy of protecting the interests of incompetent persons by assuring the integrity of the fiduciary relationship should be recognized to be of prevailing importance, relies upon Restatement of Judgments, *supra,* § 80(2), among other authorities.

The majority rejects the rule of Restatement of Judgments § 80(2) (1942), despite the fact that the rule as stated in § 80(2) is not only in accord with decisions by the majority of courts which have considered this question, but is also in accord with a previous decision of this court which the majority would overrule.

The majority would reject and apply the rule of collateral estoppel in this case upon the grounds that plaintiff had control of his wife's case; that he had the same incentive to win that case, and that there appeared under the facts of this case to be no possibility of diversity of interests. In my opinion, these considerations do not provide proper or sufficient reasons to reject the rule as stated in § 80(2).

On the contrary, the importance, as a matter of public policy, of protecting the interests of incompetent persons and preserving the integrity of the fiduciary relationship between a guardian and his incompetent ward is so great, in my judgment, as to require the adoption of a rule that does not depend for its application upon a finding of actual abuse or actual conflict of interest under the facts of a particular case, but one which will protect the interests of all incompetent persons by removing temptations and possibilities of abuse by all guardians in the discharge of their fiduciary duty to protect the interest of those who are not competent to act for themselves.

The American Law Institute, in its Restatement of Judgments § 80(2) (1942), has resolved the problem of balancing these interests by the adoption of such a rule, as follows:

"(2) Where a judgment is rendered for or against a person who is a party to the action solely in a representative capacity or who is otherwise acting solely for the benefit of another, of which fact the other party to the action has notice, the rules of res judicata do not apply in a subsequent action in which he is a party and is acting solely on his own account, except where he takes a position in the subsequent action inconsistent with that which he took in the first action."[1]

Substantially, the same rule has been adopted not only by this court in *Crow v. Abraham,* 86 Or 99, 108-09, 167 P 590 (1917), but also by the courts of most states in which this question has been considered, as set forth in Annot., 170 ALR 1180 (1947).

[1] The Restatement of Judgments 2d, Tentative Draft No. 2, would substantially maintain the same rule. Proposed § 80(2) is as follows:

"(2) A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."

As recognized by the majority, the purpose of this rule is to safeguard the integrity of the actions of persons who are functioning in a representative capacity. Thus, the rationale for the rule is stated in Comment *b* to § 80 of the Restatement as follows:

"* * * Whether or not a person having in charge the interests of another has a legally independent status, as in the case of an administrator, it is desirable that in conducting an action or defense he should have regard only for the interests of the beneficiary; he should not be hampered in this by being required to consider how his own interests or the interests of other beneficiaries might be affected in s u b s e q u e n t proceedings. * * *"[2]

This case is a good example of a difficult decision to be made by a guardian. That decision was one that should have been made uninfluenced by any consideration of his own interests. A guardian should feel free to follow the advice of competent counsel in his ward's action without (because of collateral estoppel) relinquishing the right to be independent and follow a different theory in his own action later.

It may have been to the wife's advantage to try her case first because the defense would not have prior notice of witnesses, strategy, exhibits, etc. But

---

[2] The Tentative Draft No. 2 of Restatement of Judgments 2d, n. 1, states the reason for the rule in slightly different terms in Comment *a*, as follows:

"* * * The rule that a person appearing in litigation in one capacity is not, generally speaking, affected thereby in another legal capacity serves to safeguard the integrity of such representative functions. A person appearing on behalf of another is required to act with complete fidelity to the interests of the beneficiary, uninfluenced by consideration of his own interest or advantage. By the same token, in appearing as a representative of another a person should be free to take positions inconsistent with those he might assert in litigation on his own behalf or on behalf of others he represents in some other fiduciary capacity."

it could also have been to her advantage to try her case second when there would have been prior notice to her of defendant's witnesses, strategy and exhibits. The fact that in hindsight plaintiff's attorney could not perceive any instance in which a choice made in the wife's case was adverse to the husband's case does not mean that some consideration of advantage or disadvantage did not influence any of the choices actually made.

Who is to say on which ground the guardian pursued his wife's action first? Should the court rely on the assertions of the guardian's attorney, who, no doubt, counseled the very action taken? The attorney's clients were a guardian and a ward, both of whom had an interest in letting the other proceed first, but the ward could speak only through the guardian and his attorney. The decisions made by the guardian and his attorney were probably made with the purest of motives, i.e., winning her case. But rather than permit the attorney, whose only competent client is the guardian, to make the decision this court should retain the rule previously adopted in *Crow v. Abraham, supra*—a rule that will tend to induce a wholly objective decision by the guardian and his attorney.

In *Brown v. Hilleary,* 133 Or 26, 286 P 593 (1930), this court quoted (at 38) from 2 Pomeroy, Equity Jurisprudence § 961 (4th ed 1918) as follows:

> "The equitable rules concerning dealings between guardian and ward are very stringent. The relation is so intimate, the dependence so complete, the influence so great, that any transactions between the two parties, or by the guardian alone, through which the guardian obtains a benefit, entered into while the relation exists, are in the highest degree suspicious; the presumption against them is so strong that it is hardly possible for them to be sustained. * * *"

As also stated by this court in *Egr v. Egr.*, 170 Or 1, 33, 131 P2d 198 (1942):

> "Wrongful influence is prompted by selfish motives and seeks to promote self-interest. It seeks to accomplish self-service under a pretense of unselfish devotion to the other's welfare."

In my judgment, the determination whether a guardian's choices have been uninfluenced by personal consideration is an inquiry so difficult in its inherent nature that the court should adopt an objective rule which will preclude the availability of opportunities for "self-service under a pretense of unselfish devotion." The best rule, in my opinion, to accomplish such a purpose is § 80(2) of the Restatement of Judgments and the rule previously adopted by this court in *Crow v. Abraham, supra*.

In addition to the foregoing reasons why this court should retain its present rule and should not overrule *Crow v. Abraham, supra,* there is a further practical reason for doing so—if not a further consideration of public policy.

As pointed out by appellant on this appeal, the present law, both as written and practiced, has traditionally favored the appointment of family members as guardians of, or conservators for, minors and incapacitated persons.[3] It is a fact of life that tragedies such as automobile accidents will continue to occur and that the services of guardians and conservators will be required. As a result of the majority decision

---

[3] Among other statutes, ORS 126.035 provides:

"* * * The parents of a minor, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian for the minor."

The same section further provides that with respect to the guardian of a minor or incapacitated person the court shall consider:

"* * * The relationship by blood or marriage of the proposed guardian to the proposed ward."

in this case, no competent attorney in Oregon will permit the appointment of a parent or spouse of an injured or incapacitated person as guardian in the event of litigation arising from such an accident. Rather than have family members act as guardians and conservators, unrelated persons will be appointed.

Not only will this create economic and other hardships in many cases, but the appointment of such unrelated persons will largely negate the goals of collateral estoppel, including the reduction of crowded dockets, because the same number of actions will still be filed and tried. Thus, the decision by the majority in this case will not only frustrate the declared policy of the legislature with respect to guardianships, but it will not substantially reduce the volume of litigation so as to make effective the reasons for the rules of res judicata and collateral estoppel.

For all of these reasons, I most respectfully dissent.