Argued and submitted August 1, affirmed November 17, 1980

# JONES,
*Respondent,*

*v.*

# MONTGOMERY WARD & CO., INC.,
*Appellant.*

## (No. A7804-06226, CA 14545)

619 P2d 907

Ridgway K. Foley, Jr., Portland, argued the cause for appellant. With him on the briefs were Schwabe, Williamson, Wyatt, Moore & Roberts, and Gino G. Pieretti, Jr., Portland.

Chris P. Ledwidge, Portland, argued the cause for respondent. With him on the brief was Ledwidge & Ledwidge, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Plaintiff brought an action for false arrest and assault and battery as a result of an incident which took place in the parking lot of defendant's Jantzen Beach store. She sought both general and punitive damages on each cause of action.[1] Defendant appeals from the judgment entered on a verdict for plaintiff and makes two assignments of error. The first is that the court erred in denying defendant's motion *in limine* to exclude reference to, use or discussion of defendant's security manual, which contains its rules and instructions for dealing with shoplifters. Secondly, defendant contends that the court erred in not entering judgment for defendant on the original jury verdict and that there was jury misconduct.

Plaintiff was shopping with her mother in defendant's store. Both testified that they purchased a pantsuit in a clothing department and then went to the credit department to pay on an account. They then left the store and went to the parking lot, where they were stopped by one of defendant's security officers. A skirmish broke out between plaintiff and the security officer; eventually, other security personnel arrived and separated the two.

The security officer testified that from an observation booth through one-way glass she observed plaintiff and her mother stuff a two-piece clothing outfit into a Montgomery Ward bag. The security officer then stepped away from the window for a few seconds and called to a clerk to request security assistance. She returned to the observation window and saw plaintiff and her mother leaving the store; she left the booth, losing sight of them again until she saw them in the parking lot. She approached the women, identified herself as a security officer and attempted to place plaintiff under arrest. She said that she actually saw the stolen merchandise in a bag which plaintiff was carrying, but that plaintiff tossed the bag into the back of a pickup truck and prevented the security officer from retrieving it. Shortly thereafter, a fight broke out, during which plaintiff's mother drove away in the truck. No bag with stolen merchandise in it was recovered.

---

[1] Plaintiff's claim for special damages was withdrawn during trial.

Defendant made a motion *in limine* to exclude its security manual from the trial, arguing that the guidelines in the manual impose a more stringent legal standard on security personnel than does Oregon law. The security manual sets forth the guidelines which defendant's security personnel are supposed to follow when dealing with shoplifters, including a provision that they should not apprehend a shoplifter if constant observation was not maintained. Plaintiff contended that the manual guidelines were relevant on the issue of punitive damages and the reasonableness of defendant's conduct.

The court denied the motion and ruled that the parties were entitled to inquire of witnesses whether their actions conformed to the guidelines. The court stated:

"I would say that — the rules themselves, I think, are not admissible in evidence ***. Counsel is entitled to inquire of the witnesses whether or not they conformed to their company's policies, and to inquire what those rules and policies may be ***. They have some relevance to the issue of whether or not the person is acting as a reasonable officer in that capacity, and I think that there should be no reference made or no offer of the — of the rules themselves as evidence because they are in some fashion inconsistent with the law, as I understand it, and it has been presented that they are more stringent than the law for the purpose of attempting to avoid any possible civil liability. The Court will, of course, instruct on what the law is, and I think it might be error to permit the introduction of any written rules which might be inconsistent with the law, but you may inquire as to whether or not any breach violates the practices and policies of the company.

"*  *  *  *  *

"*** The same rule will apply to [defendant's counsel] as does for Counsel for plaintiff, that you may inquire of your witnesses whether or not these are the purposes or whether or not they are simply guidelines, and why they are more stringent than what the law requires and so forth."

During examination of defendant's security personnel, plaintiff established that no exception existed to the rule of constant observation and that it had been violated in this case.

Neither party cites us to cases discussing the specific question of the admissibility in a false arrest case of a defendant's own security rules or guidelines for dealing with shoplifters, but there are cases in other jurisdictions dealing with the question. *See* Annotation, 31 ALR3d 705 and cases cited therein. In those cases the evidence was ruled admissible for the purpose of showing that the defendant's employee was or was not acting within his authority in causing the arrest; one case also admitted the evidence for the purpose of showing grounds for punitive damages. *Peak v. W. T. Grant Co.,* 386 SW2d 685 (1964, Mo App).

ORS 131.655 authorizes police officers and merchants to detain persons on reasonable cause to believe that they have committed or attempted theft in a store. (*See State v. Greene,* 285 Or 337, 354, n 11, 591 P2d 1362 (1979).) It provides:

"(1) Notwithstanding any other provision of law, a peace officer, merchant or merchant's employe who has probable cause for believing that a person has committed theft of property of a store or other mercantile establishment may detain and interrogate the person in regard thereto in a reasonable manner and for a reasonable time.

"(2) If a peace officer, merchant or merchant's employe, with probable cause for believing that a person has committed theft of property of a store or other mercantile establishment, detains and interrogates the person in regard thereto, and the person thereafter brings against the peace officer, merchant or merchant's employe any civil or criminal action based upon the detention and interrogation, such probable cause shall be a defense to the action, if the detention and interrogation were done in a reasonable manner and for a reasonable time."

As an affirmative defense defendant alleged that it had probable cause to believe that merchandise was taken by plaintiff without it being paid for and that contact between plaintiff and its security employee was pursuant to the right to arrest.

The jury was instructed on probable cause as follows:

"*** The defendants herein are not to be held liable for alleged false imprisonment [*sic*] if their employees had

probable cause for believing that the plaintiff had committed a crime and, thereafter, detained the plaintiff in a reasonable manner and for a reasonable time.

"Probable cause means reasonable grounds supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that the accused committed the criminal offense with which he or she is charged. It is not necessary that the defendant prove that the plaintiff was guilty of a crime. The defendant must only prove that their agents had reasonable cause to believe that the plaintiff had committed a crime and that the subsequent detention was reasonable in the manner and time."

This instruction is not challenged.

Evidence that the security officer violated defendant's rule of constant observation and therefore, under its own rules, should not have arrested plaintiff injected a standard different from that of reasonable cause provided in the statute. Although evidence that the security officer took her eyes off plaintiff and her mother for a brief moment was relevant to whether the officer had reasonable cause to arrest, evidence that that act violated defendant's rules would tend to confuse the jury as to the applicable standard, even though the statutory standard was instructed on. In *Jones v. Mitchell Bros.,* 266 Or 513, 524, 511 P2d 347, 514 P2d 350 (1973), the court upheld the exclusion of defendant's safety manual for similar reasons:

"The trial court permitted the plaintiff wide latitude in proving Schamburger's expertise in highway safety, including questions about his attendance at safety seminars, his familiarity with truck safety literature, and his responsibilities in connection with the safety operations for a large fleet of trucks, and with accident salvage operations and investigations. Plaintiff was also allowed to show that Schamburger had written a safety manual. The court, however, properly excluded statements from the safety manual itself which might have created doubt in the minds of the jury as to which standard of care was applicable to Schamburger, the law, as explained to the jury by the court, or the instructions contained in the Drivers' Manual. We think there is no merit in this assignment of error."

■      We conclude that it was error to admit defendant's rules instructing its employees on how to deal with shoplifters. To warrant reversal, however, the ruling of the trial court must not only be erroneous, but prejudicial. *Scanlon v. Hartman,* 282 Or 505, 579 P2d 851 (1978). Ordinarily, error in the admission of evidence is deemed to be prejudicial, unless from examination of the record it appears that the contrary is affirmatively shown. *Elam v. Soares,* 282 Or 93, 577 P2d 1336 (1978). We believe the admission of the evidence was not prejudicial here, because the jury assessed neither general nor punitive damages on the false arrest cause of action,[2] even though it found for plaintiff on that cause of action. That was the equivalent of a defense verdict. *State ex rel Amore v. Wilkinson,* 212 Or 236, 319 P2d 893 (1957).

A verdict was returned for plaintiff on both causes of action, awarding no general damages and no punitive damages on the false arrest cause of action, and no general damages and $12,500 punitive damages for the assault and battery. Defendant asserted that that verdict amounted to a defense verdict because no general damages were awarded. The court concluded that the verdict was improper and declined to accept it. It reinstructed the jury regarding damages and advised them for the first time[3] that punitive damages may not be returned in the absence of some finding of general damages. Neither party objected to the terms of the reinstruction. After a short period of deliberation the jury returned a verdict in favor of plaintiff on both counts, again assessing no general or punitive damages on the false arrest cause of action, but awarding $12,000 general damages and $500 punitive damages on the assault

_____

[2] Defendant argues that prejudice resulted from the admission of its company guidelines because plaintiff did not limit her interrogation concerning the security manual to the false arrest cause of action. It argues that its guidelines were discussed in terms of an "assault" or "altercation" with a customer. The record does not support that argument; it shows that plaintiff inquired whether it is a ground for dismissal if the employee wrongfully arrested a customer and an assault or altercation occurred. Evidence of a violation of the security guidelines was not referred to in the context of the assault and battery cause of action.

[3] In ruling against defendant's motion for entry of the verdict as a defense verdict, the court said: "I don't think that in my instructions I advised the jury that punitive damages may not be returned in the absence of some general damages. I probably overlooked that."

and battery cause. That verdict was received by the court, and a judgment was entered on it. Defendants moved for a mistrial and again for entry of judgment on the original verdict. The motions were denied.

■■ In *Biegler v. Kirby,* 281 Or 423, 574 P2d 1127 (1978), the jury returned a verdict for plaintiff but assessed no general and no special damages. The trial court declined to accept that verdict and after reinstruction sent the jury back for further deliberation. The jury then returned a verdict for defendant. In discussing, abstractly, whether the first verdict offered by the jury should have been accepted and a judgment entered for defendant,[4] the court stated:

"*** *State ex rel Amore v. Wilkinson,* 212 Or 236, 319 P2d 893 (1957), *Fischer v. Howard,* 201 Or 426, 271 P2d 1059, 49 ALR2d 1301 (1954) and *Snyder v. Portland Railway, L. & P. Co.,* 107 Or 673, 215 P 887 (1923), hold that verdicts for plaintiff with zero damages are in reality verdicts for the defendant. This results, not from the precise wording of the verdict, but from a construction of the verdict to determine the jury's intent. If, however, the verdict is not received by the court there is no necessity to construe it. *See State ex rel Amore v. Wilkinson, supra.*

"When a verdict in this form is rejected there are two courses of action open to the court. It may declare a mistrial or reinstruct the jury and resubmit the case to them pursuant to ORS 17.355.[1] *Lewis v. Devils Lake Rock Crushing Co.,* 274 Or 293, 545 P2d 1374 (1976); *Moore v. Drennan,* 269 Or 189, 523 P2d 1250 (1974); *Hickman v. Haughton Elev. Co.,* 268 Or 192, 519 P2d 369 (1974). The court chose the latter course of action.

"[1] ORS 17.355(2) provides: '*** If the verdict is informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be again sent out.'" 281 Or at 428-429.

In this case, as in *Biegler,* the initial verdict was not received; the court properly resubmitted it to the jury, as it had the discretion to do. Therefore, we need not construe it. *See Davis v. Hinman,* 288 Or 505, 512, 605 P2d 700 (1980).

[4] Because the defendants in *Biegler* did not cross-appeal from the denial of their motion for directed verdict, it was not necessary for the court to decide this issue.

■ Defendant claims that, even though the court was entitled to reinstruct the jury and resubmit the case, the second verdict shows the jury was guilty of misconduct, and so a mistrial should have been granted. We do not agree. The court recognized that the first verdict on the assault and battery cause was improper in that it awarded punitive damages without an award of general damages. The court also realized that it had inadvertently omitted to instruct the jury on the point. It exercised its discretion to reinstruct and send the jury back. When the jury brought back its second verdict, it did not evidence "a stubborn adherence to an invalid verdict" (*Baden v. Sunset Fuel,* 225 Or 116, 120, 357 P2d 410 (1960)). "Confusion or misunderstanding of instructions is not misconduct justifying a mistrial." *Biegler v. Kirby, supra,* 281 Or at 429. Giving a jury the opportunity to deliberate under adequate instructions is proper, and refusing to grant a mistrial when there is no indication of confusion or misunderstanding is not error. The jury here did precisely what it would have been lawful for it to do the first time under proper instructions.

Affirmed.