Argued and submitted January 3, reversed and remanded August 14, petition for review allowed December 17, 2002 (335 Or 114)

Trudy JETT
and Ron Jett,
*Respondents,*

*v.*

FORD MOTOR COMPANY,
a Delaware corporation,
*Appellant,*

*and*

MILLIGAN MOTORS, INC.,
an Oregon corporation,
*Defendant.*

FORD MOTOR COMPANY,
a Delaware corporation,
and Milligan Motors, Inc.,
an Oregon corporation,
*Third-Party Plaintiffs,*

*v.*

Tim TESTERMAN,
dba Advanced Auto Detailing,
*Third-Party Defendant.*

9801-00538; A111123

52 P3d 441

John McCauley, Baltimore, Maryland, appearing *pro hac vice*, argued the cause for appellant. On the briefs were Karen O'Kasey, Richard K. Hansen, and Schwabe, Williamson & Wyatt, P.C.

James C. Tait argued the cause for respondents. With him on the brief were Tait & Associates, Mark Bocci, and Pippin & Bocci.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Schuman, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiff Trudy Jett was injured in an accident as she loaded parcels on the job from a delivery truck that she drove for the United Parcel Service (UPS). She and her husband initiated this action for negligence and loss of consortium.[1] Named as defendants were Ford Motor Company (Ford), the manufacturer of the truck, and Milligan Motors, Inc., the company that serviced it. Defendants asserted that the injury was caused by plaintiff's own negligence in, among other things, failing to follow certain UPS safety rules that require drivers to put their trucks in "park," turn off the engine, and set the parking brake before getting out. The trial court, however, excluded evidence of the UPS safety rules. A jury found for plaintiff, assigning Ford 85 percent of the fault and plaintiff 15 percent. Ford appeals, raising a number of assignments of error, including that the trial court erred in excluding the evidence of the UPS safety rules and in delivering an erroneous instruction to the jury concerning comparative fault. We conclude that Ford is correct about the exclusion of the UPS safety rules and reverse and remand on that basis. We also conclude that Ford failed to preserve its objection to the contested jury instruction and therefore do not address that matter.

The facts relevant to the disposition of the appeal are not in contention. Plaintiff was a professional package delivery truck driver for UPS. On April 22, 1996, she reported that her regular truck was difficult to shift. Two days later, she again reported trouble with shifting. On April 29, the truck was taken in for servicing, and plaintiff was given a replacement truck. Plaintiff, however, reported that the replacement vehicle also was difficult to shift. On April 30, the individual responsible for truck maintenance and service spoke with plaintiff about the shifting problem with the replacement truck. He told plaintiff that the replacement truck was unsafe and that she should wait until later that morning to do her rounds, when her regular truck would be available.

---

[1] Although both Trudy and Ron Jett are plaintiffs, this appeal involves only the conduct of Trudy Jett. Accordingly, unless otherwise indicated, when we say "plaintiff" in the singular, we refer to Trudy Jett.

Plaintiff declined to wait. She loaded the replacement truck with parcels, turned on the ignition, and pulled the truck forward approximately 10 feet. Immediately, however, she encountered difficulty with the gear shift. She moved the transmission shift lever to "neutral." She believes that she set the parking brake, because that was her usual practice. With the engine still running, she got out of the truck and walked behind it to retrieve some additional packages. While she was standing between the rear of the truck and the loading dock, the truck rolled back and pinned her against the dock, causing severe injuries.

Before trial, plaintiffs moved to exclude evidence of the UPS safety rules concerning the proper procedure for the disposition of delivery trucks before getting out of them. Initially, the trial court ruled that the rules are relevant to the issues of comparative negligence and denied plaintiffs' motion. The following day, however, the trial court reconsidered. The court drew a distinction between internal company safety rules and a safety-related law or regulation. Citing *Jones v. Mitchell Bros.*, 266 Or 513, 511 P2d 347 (1973), and *Jones v. Montgomery Ward*, 49 Or App 231, 619 P2d 907 (1980), the court held that the former are not relevant, while the latter are. Accordingly, the trial court decided to allow plaintiffs' motion to exclude evidence of UPS safety rules.

At trial, Ford offered the testimony of Isfeld, a UPS driver trainer with 27 years of experience in the package delivery business. When Ford asked him about the standards that he uses in training UPS drivers, plaintiffs objected on the basis of the trial court's earlier ruling about internal UPS safety rules. An offer of proof followed, during which Isfeld testified about UPS rules concerning shifting the vehicle into park, setting the parking brake, and turning off the vehicle before getting out. The trial court ruled that Isfeld could not refer to any internal UPS safety rules because they were not relevant.

Following the close of the evidence, the trial court instructed the jury that:

"A special rule of comparative negligence applies only to a products liability case.

"When considering the negligence, if any, of the plaintiff, carelessness or negligent failure to discover or guard against the product defect is not an appropriate defense and may not be considered by the jury.

"Other forms of negligent conduct by plaintiff, if any, such as unreasonableness, misuse of the product, or unreasonable use despite knowledge of the dangerous defect in the product and awareness of the risk posed by that defect may be considered by the jury."

The exception is known as a *Sandford* instruction in that it is based on *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 598, 642 P2d 624 (1982). Ford took exception to the instruction in the following terms:

"I do except to the exception given, the Sandford instruction that was crafted during the lunch hour that the court read dealing with the inadvertent and what plaintiffs—what's the jury can and cannot consider concerning plaintiff's own comparative fault.

"We would take exception to that instruction, your Honor. That will be it."

During deliberations, the jury sent a note to the court asking for "the legal definition of careless and negligence and the differences between [them]." Without objection, the court referred the jury to its previous instructions.

The jury returned a verdict in favor of plaintiff Trudy Jett and against Ford in the amount of $3,038,317 and in favor of plaintiff Ron Jett and against Ford in the amount of $42,500.

■ We begin with Ford's contention that the trial court erred in excluding evidence of the UPS safety rules. According to Ford, the distinction on which the trial court relied between internal company safety rules and safety-related laws and regulations is not recognized by the Oregon appellate courts. Plaintiffs respond that the trial court correctly excluded the evidence of the UPS safety rules because they are merely internal company rules, which are not admissible.

■ Whether evidence is relevant is a question of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999); *Blume v. Fred Meyer, Inc.*, 155 Or App 102, 108, 963 P2d 700 (1998).

Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401; *see also State v. Hampton*, 317 Or 251, 255, 855 P2d 621 (1993).

In holding that the internal company safety rules are not relevant, the trial court expressly relied on *Mitchell Bros.* and *Montgomery Ward*. In the first, an automobile accident case, the plaintiff offered into evidence a "driver's manual" published by the employer of one of the defendant truck drivers, the foreword to which cautioned drivers to be aware that other motorists sometimes make mistakes or act recklessly or absentmindedly. The trial court excluded any references to the contents of the foreword of the driver's manual, and the Supreme Court affirmed, holding that the trial court "properly excluded statements from the safety manual itself which might have created doubt in the minds of the jury as to which standard of care was applicable" to the case. *Mitchell Bros.*, 266 Or at 524.

The second case was an action for false arrest and assault and battery that arose out of an incident in which the defendant retail store's security officer stopped the plaintiff for shoplifting. The plaintiff sought to introduce a manual that set forth guidelines that the defendant required its security personnel to follow when dealing with shoplifters. The trial court admitted the evidence. On appeal, the defendant argued that the manual was inadmissible, and this court agreed, reasoning that evidence that the defendant violated the guidelines set forth in its manual "would tend to confuse the jury as to the applicable standard, even though the statutory standard was instructed on." *Montgomery Ward*, 49 Or App at 236.

In neither of those cases is there a statement that nongovernmental safety rules are never *relevant*, only that, on the facts of those particular cases, admission of safety manuals would be confusing to the jury. The case law, in fact, is to the contrary.

In *Hansen v. Abrasive Engineering and Manufacturing*, 317 Or 378, 856 P2d 625 (1993), the plaintiff brought a

product liability action against the defendant for injuries sustained while cleaning a sanding machine that the defendant designed and manufactured. The plaintiff sought to introduce evidence of, among other things, advisory standards promulgated by the American National Standards Institute (ANSI) concerning certain safety features that he contended should have been incorporated into the machine. Over the defendant's objection, the trial court permitted the jury to consider the ANSI advisory standards on the issue of whether the defendant met the applicable standard of care. On appeal, the defendant argued that the trial court erred in permitting the jury to consider the ANSI advisory standards. The Supreme Court did not agree. Although not promulgated by a government entity and not binding on the defendant, the court held, "[t]he ANSI advisory standards provide some evidence of the custom in defendant's industry and, therefore, are relevant to the jury's consideration of whether defendant met the standard of care." *Id.* at 384-85.

Similarly, in *Cole v. Multnomah County*, 39 Or App 211, 592 P2d 221, *rev den* 286 Or 449 (1979), an inmate of a county jail brought an action against the county for negligence in failing to take steps to prevent him from attempting to commit suicide. The essence of his case was that the county knew or should have known that he was mentally unstable and likely to attempt to take his own life. He offered into evidence a county manual concerning the operation of local correctional facilities; the manual had not been adopted as an ordinance and did not have the force of local legislation. The trial court excluded the manual as evidence of the standard of care that the county owed the plaintiff. On appeal, this court reversed, concluding that "such evidence is generally admissible," *id.* at 217, because it "constitutes some indication of the care required under the circumstances." *Id.* at 218. The court noted *Mitchell Bros.*, but concluded that the exclusion of the safety manual in that case was driven by the facts and not by any general rule of relevance or admissibility. *Cole*, 39 Or App at 217; *see also Volt Services Group v. Adecco Employment Services*, 178 Or App 121, 131-32, 35 P3d 329 (2001), *rev den* 333 Or 567 (2002) (advisory code of ethics relevant to whether the defendant's conduct was improper under the circumstances); *Hval v. Southern Pacific*, 39 Or

App 479, 483, 592 P2d 1046, *rev den* 286 Or 521 (1979) ("It was proper for the jury to consider whether plaintiff failed to observe the company's safety rules in deciding whether [the plaintiff] was negligent.").

In this case, the trial court excluded the evidence of the UPS safety manual on the ground that it is not relevant. As in *Hansen* and *Cole*, however, the safety manual was relevant to the reasonableness of plaintiff's conduct in getting out of the delivery truck without first shifting into "park" and shutting off the ignition.

Plaintiffs argue that, even if the trial court erred in concluding that the manual is not relevant, the court nevertheless was correct in excluding it because it expresses "a standard higher than the law" in that it contains rules that are phrased in terms of "absolutes" that do not allow for any exceptions. Ford replies that whether the rules are absolute is immaterial, because they are not being offered as evidence of negligence *per se*, only as relevant evidence of the reasonableness of plaintiff's conduct. In any event, Ford argues, the fact is that the rules are not inflexible, as the trial court itself recognized.

The short answer to plaintiffs' contention is that the rules at issue in this case are no more or less "absolute" than the ones that were held admissible in *Hansen* and *Cole*. Indeed, few, if any, safety manuals merely parrot the legal standard that individuals are to act reasonably under the circumstances. Aside from that, however, plaintiffs ignore the fact that Ford is not arguing that the violation of the rules contained in the safety manual amounts to negligence *per se*. As in *Hansen* and *Cole*, Ford argues only that the rules contained in the safety manual are relevant to the reasonableness of plaintiff's conduct.

■■  We conclude that the trial court erred in excluding the evidence of the UPS safety manual. Such error requires reversal only if it is prejudicial. OEC 103(1). "Prejudicial" error occurs "if the excluded evidence has some likelihood of affecting the jury's result." *Cunningham v. Montgomery*, 143 Or App 171, 181, 921 P2d 1355, *rev den* 324 Or 487 (1996). In this case, the defense of comparative fault was central to Ford's case, and its contention that plaintiff failed to follow

UPS driver safety rules was an important component of that defense. The jury, in fact, found that she was partially at fault, even without reference to the UPS manual. We cannot say that the exclusion of the manual did not have at least some likelihood of affecting the jury's assessment of comparative fault. We therefore reverse and remand.

■ Ford contends that we should address the propriety of the *Sandford* instruction that the trial court delivered to the jury, because it is an issue that is likely to arise on remand. Plaintiffs argue that the issue was not preserved. According to plaintiffs, Ford took exception to the instruction, but it never explained to the trial court the basis for its exception.

We agree with plaintiffs. Ford did say: "We would take exception to that instruction, your Honor. That will be it." It did not, however, explain the basis for the exception. ORCP 59 H requires that exceptions be "particularly stated." That requirement "ensures that trial courts are afforded a fair opportunity to correct possible mistakes." *State v. Layton*, 163 Or App 37, 40, 986 P2d 1221 (1999), *rev den* 330 Or 252 (2000). Ford did not provide the trial court such a fair opportunity in this case.

Ford advances other contentions that we need not address in light of our disposition of the appeal.

Reversed and remanded.