Argued and submitted March 5, decision of Court of Appeals reversed, case remanded to Court of Appeals for further proceedings July 3, 2003

Trudy JETT
and Ron Jett,
*Petitioners on Review,*

*v.*

FORD MOTOR COMPANY,
a Delaware corporation,
*Respondent on Review,*

*and*

MILLIGAN MOTORS, INC.,
an Oregon corporation,
*Defendant.*

FORD MOTOR COMPANY,
a Delaware corporation,
and Milligan Motors, Inc.,
an Oregon corporation,
*Third-Party Plaintiffs,*

*v.*

Tim TESTERMAN,
dba Advanced Auto Detailing,
*Third-Party Defendant.*

(CC 9801-00538; CA A111123; SC S49787)

72 P3d 71

W. Eugene Hallman, Hallman & Dretke, Pendleton, argued the cause and filed the briefs for petitioners on review.

John McCauley, Venable LLP, Baltimore, Maryland, argued the cause for respondent on review. With him on the briefs were Michael T. Garone, Schwabe, Williamson & Wyatt, PC, Portland, and Jonathan M. Hoffman, Martin, Bischoff, Templeton, Langslet & Hoffman, LLP, Portland.

Before, Carson, Chief Justice, Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.

DE MUNIZ, J.

**DE MUNIZ, J.**

This is a civil case in which plaintiff filed an action against defendant Ford Motor Company (Ford), alleging that a delivery truck that she operated as an employee of United Parcel Service (UPS) was defective and injured her.[1] At trial, Ford denied that the truck was defective and also contended that plaintiff had been negligent and had contributed to her injuries. The jury concluded that Ford was 85 percent liable and that plaintiff was 15 percent liable. Ford appealed from the judgment entered on the jury's verdict.

On appeal, Ford assigned error to the trial court's refusal to admit into evidence portions of certain UPS safety rules, the trial court's instruction on comparative fault, and the denial of Ford's motion for mistrial based on plaintiff's counsel's closing argument. The Court of Appeals reasoned that this court's decisions in *Jones v. Mitchell Bros.*, 266 Or 513, 511 P2d 347 (1973), and *Hansen v. Abrasive Engineering and Manufacturing*, 317 Or 378, 856 P2d 625 (1993), permit a trier of fact to consider a company's internal safety rules when those rules are relevant in determining the standard of care that a party was required to exercise in the circumstances. The Court of Appeals concluded that "the safety [rules were] relevant to the reasonableness of plaintiff's conduct" and that the exclusion of the rules had at least some likelihood of affecting the jury's assessment of comparative fault. *Jett v. Ford Motor Co.*, 183 Or App 260, 266-69, 52 P3d 441 (2002). The Court of Appeals, therefore, reversed the trial court's judgment and remanded the case to that court. *Id.* The Court of Appeals did not address Ford's other two assignments of error, concluding that Ford had not preserved its assignment of error relating to the comparative fault instruction and that, in light of the disposition of the case, the court did not need to reach Ford's assignment of error regarding the mistrial motion. We allowed plaintiff's petition for review and now reverse the decision of the Court of Appeals and remand to that court for further proceedings.

---

[1] Plaintiff's husband also filed a claim against Ford. He is not a party on review.

On review, plaintiff argues that the UPS safety rules were not relevant to prove the pertinent standard of care and that, even if they were, they would have tended to confuse the jury. Ford's response is that the Court of Appeals correctly concluded that, under this court's decisions, internal safety rules can be admissible to prove the standard of care in specific instances.

■ Plaintiff, however, makes an additional argument, one that, if well taken, would obviate our need to determine whether the particular safety rules in this case were admissible. Plaintiff maintains that rules governing our appellate standard of review require us to affirm the trial court judgment because any error in excluding the UPS safety rules did not substantially affect Ford's rights. We now address that argument and, in doing so, we assume, for purposes of this opinion, that the UPS safety rules were relevant and that the trial court erred in refusing to admit them into evidence.

Two related standards govern our consideration of evidentiary questions on appellate review. First, "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party." ORS 19.415(2). *See Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 173, 61 P3d 928 (2003) ("The possibility that an error might have resulted in a different jury verdict is insufficient under [ORS 19.415(2)]. Instead, the court must be able to conclude, from the record, that the error 'substantially affect[ed]' the right of the losing party."). Second, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" OEC 103(1).

The Court of Appeals summarized the facts as follows:

> "Plaintiff was a professional package delivery truck driver for UPS. On April 22, 1996, she reported that her regular truck was difficult to shift. Two days later, she again reported trouble with shifting. On April 29, the truck was taken in for servicing, and plaintiff was given a replacement truck. Plaintiff, however, reported that the replacement vehicle also was difficult to shift. On April 30, the individual responsible for truck maintenance and service spoke with plaintiff about the shifting problem with the

replacement truck. He told plaintiff that the replacement truck was unsafe and that she should wait until later that morning to do her rounds, when her regular truck would be available.

"Plaintiff declined to wait. She loaded the replacement truck with parcels, turned on the ignition, and pulled the truck forward approximately 10 feet. Immediately, however, she encountered difficulty with the gear shift. She moved the transmission shift lever to 'neutral.' She believes that she set the parking brake, because that was her usual practice. With the engine still running, she got out of the truck and walked behind it to retrieve some additional packages. While she was standing between the rear of the truck and the loading dock, the truck rolled back and pinned her against the dock, causing severe injuries.

"Before trial, plaintiffs moved to exclude evidence of the UPS safety rules concerning the proper procedure for the disposition of delivery trucks before getting out of them. Initially, the trial court ruled that the rules are relevant to the issues of comparative negligence and denied plaintiffs' motion. The following day, however, the trial court reconsidered. The court drew a distinction between internal company safety rules and a safety-related law or regulation. Citing *Jones v. Mitchell Bros.*, 266 Or 513, 511 P2d 347 (1973), and *Jones v. Montgomery Ward*, 49 Or App 231, 619 P2d 907 (1980), the court held that the former are not relevant, while the latter are. Accordingly, the trial court decided to allow plaintiffs' motion to exclude evidence of UPS safety rules.

"At trial, Ford offered the testimony of Isfeld, a UPS driver trainer with 27 years of experience in the package delivery business. When Ford asked him about the standards that he uses in training UPS drivers, plaintiffs objected on the basis of the trial court's earlier ruling about internal UPS safety rules. An offer of proof followed, during which Isfeld testified about UPS rules concerning shifting the vehicle into park, setting the parking brake, and turning off the vehicle before getting out. The trial court ruled that Isfeld could not refer to any internal UPS safety rules because they were not relevant."

183 Or App 263-64.

At trial, the issue for the jury was whether Ford had manufactured a defective product and, if so, to what extent plaintiff's negligence had caused her injuries. If the jury decided that Ford was liable, then the jury had to determine the extent of plaintiff's responsibility for her injuries under principles of comparative fault.

Ford sought to introduce the UPS safety rules to prove that plaintiff had acted negligently, *i.e.*, that plaintiff had acted unreasonably in getting out of the delivery truck without shifting into park, setting the parking brake, and turning the motor off. At trial, however, several experienced delivery drivers offered testimony that was consistent with the substance of the UPS rules. Plaintiff's expert, a UPS Fleet Manager with experience in training UPS drivers, testified on cross-examination:

"Q   Sir, as someone with this background, it would be fair to say, wouldn't it, that you consider it safe practice to make sure your vehicle, especially if you are driving a [delivery truck] such as the one that Mrs. Jett was driving, if you were driving a [delivery truck], you would want to make sure that vehicle was in park before you got out of it; correct?

"A   Correct.

"Q   Sir, if you were in a [delivery truck] and * * * couldn't get it into park after you had started the engine and taken it out of park and driven it forward, then you tried to put it into park and you couldn't do that, with your background, it would be safe in your view, a safe practice to make sure, at least to get that engine turned off before you get out if you don't know — if you don't know that you are in park; right?

"A   Correct."

Another UPS driver with 16 years' experience testified:

"Q   Over the years you have learned that when you exit a vehicle you set the parking brake, haven't you?

"A   Yes, sir.

"Q   And you learned that you shut the vehicle off when you exit the vehicle, haven't you?

"A  Yes."

Another UPS driver with 10 years' experience testified on cross-examination by Ford's counsel:

"Q  [W]henever you left your vehicle, you set that parking brake, didn't you?

"A  Are you asking if I did that consistently or are you asking if I do that?

"Q  Was that your practice to set the parking brake?

"A  Yes.

"Q  And it was not your practice to leave the engine running without setting the parking brake, was it?

"A  No.

"Q  And, in fact, it was not your practice to leave your engine running if you weren't in park; right?

"A  No, I wouldn't leave my engine running if I was not in park in an automatic transmission vehicle.

"Q  Right. You understood it would not be a safe practice to do that?

"A  That's correct."

Even plaintiff admitted under cross-examination that she knew that she should turn the engine off and set the parking brake:

"Q  You knew that whenever you had stopped your vehicle to get out of it that you needed to turn your engine off, did you not?

"A  Yes. I knew that that's what they wanted you to do and that's what you should do.

"Q  And you also knew that you were to always put the vehicle into park whenever you got out of the vehicle as well, right?

"A  Yes."

As previously noted, to provide a basis for reversal or modification of a judgment, any evidentiary error must substantially affect a party's rights. The record that we have set out reflects an accumulation of testimony establishing that

the applicable standard of care for a delivery driver in plaintiff's situation included putting the vehicle in park, turning off the motor, and setting the brake before getting out of the delivery vehicle. Indeed, plaintiff's testimony appears fairly to acknowledge the existence of rules to that effect and the fact that she had violated those rules. Therefore, even if we assume that excluding the UPS safety rules from evidence was an error, we cannot conclude that the error substantially affected Ford's rights because ample evidence in the record made the same point that Ford had sought to make by introducing the UPS safety rules. Thus, Ford has failed to demonstrate prejudicial error sufficient to justify reversal of the trial court judgment under ORS 19.415(2). *See Shoup*, 335 Or at 174 (describing burden of party on appeal to obtain reversal of judgment).

■ We now address one of the remaining questions, *viz.*, the Court of Appeals' conclusion that Ford did not properly preserve its objection to the trial court's comparative fault instruction. The jury was instructed as follows:

> "A special rule of comparative negligence applies only to a products liability case.

> "When considering the negligence, if any, of the plaintiff, carelessness or negligent failure to discover or guard against the product defect is not an appropriate defense and may not be considered by the jury.

> "Other forms of negligent conduct by plaintiff, if any, such as unreasonableness, misuse of the product, or unreasonable use despite knowledge of the dangerous defect in the product and awareness of the risk posed by that defect may be considered by the jury."

183 Or App at 264-65. That instruction is known as a "Sandford" instruction, after *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 642 P2d 624 (1982), in which this court held that a plaintiff's negligence may be considered in a products liability action, "unless the user's alleged negligence consists in the kind of unobservant, inattentive, ignorant, or awkward failure to discover or guard against the defect that goes toward making the product dangerously defective in the first place." *Id.* at 598.

At trial, Ford objected to the comparative fault instruction quoted above. Specifically, Ford disagreed with the paragraph in the instruction that stated, "When considering the negligence, if any, of the plaintiff, carelessness or negligent failure to discover or guard against the product defect is not an appropriate defense and may not be considered by the jury." Ford protested that it had not alleged that plaintiff had been careless or negligent regarding a product defect, but that plaintiff had known that she was supposed to have acted in a particular manner (*i.e.*, in accordance with the UPS safety rules), and had not. Plaintiff, however, argued that the instruction properly was given. Her theory was that the design of the truck's shifting mechanism was prone to defective operation. According to plaintiff, the instruction was proper, because the defective design of the truck's shifting mechanism could mislead a driver into believing that the truck was shifted into neutral when it was actually between gears or in reverse, and plaintiff should not be faulted for that kind of mistake.

The Court of Appeals held that Ford had failed to preserve its objection to the instructions because Ford had failed to explain the basis of the exception as ORCP 59 H requires.[2] *Jett*, 183 Or App at 269. However, as the foregoing recitation demonstrates, that conclusion was incorrect. Ford had explained its objection to the trial court, thus giving the court the opportunity to change the instruction, and Ford had renewed its objection just before and after the court gave the instruction to the jury. *See Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995) (rules pertaining to preservation of error are intended to advance goals such as ensuring that parties clearly present arguments to trial court and that parties are

---

[2] ORCP 59 H provides:

"No statement of issues submitted to the jury pursuant to subsection C(2) of this rule and no instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception is made immediately after the court instructs the jury. Any point of exception shall be particularly stated and taken down by the reporter or delivered in writing to the judge. It shall be unnecessary to note an exception in court to any other ruling made. All adverse rulings, including failure to give a requested instruction or a requested statement of issues, except those contained in instructions and statements of issues given, shall import an exception in favor of the party against whom the ruling was made."

not taken by surprise, misled, or denied opportunities to contest opposing arguments); *Delaney v. Taco Time Int'l.*, 297 Or 10, 18, 681 P2d 114 (1984) (purpose of requiring exceptions to jury instructions is to give trial court opportunity to correct instruction). We, therefore, conclude that the objection to the instruction was preserved. On remand, the Court of Appeals must address the merits of Ford's assignment of error concerning the "Sandford" instruction. *See State ex rel Carlile v. Frost*, 326 Or 607, 617, 956 P2d 202 (1998) ("When this court concludes that the Court of Appeals has erred in not deciding an issue on the merits, it usually remands the case to that court to consider the issue in the first instance.").

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.