Submitted on remand from the Oregon Supreme Court August 27, 2003, affirmed February 11, petition for review denied June 15, 2004 (337 Or 160)

Trudy JETT
and Ron Jett,
*Respondents,*

*v.*

FORD MOTOR COMPANY,
a Delaware corporation,
*Appellant,*

*and*

MILLIGAN MOTORS, INC.,
an Oregon corporation,
*Defendant.*

FORD MOTOR COMPANY,
a Delaware corporation,
and Milligan Motors, Inc.,
an Oregon corporation,
*Third-Party Plaintiffs,*

*v.*

Tim TESTERMAN,
dba Advanced Auto Detailing,
*Third-Party Defendant.*

9801-00538; A111123

84 P3d 219

John McCauley, Baltimore, Maryland, appearing *pro hac vice*, Karen O'Kasey, Richard K. Hansen, and Schwabe, Williamson & Wyatt, P.C., for appellant.

James C. Tait, Tait & Associates, Mark Bocci, and Pippin & Bocci for respondents.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Schuman, Judge.

LANDAU, P. J.

## LANDAU, P. J.

This case is before us on remand from the Oregon Supreme Court, *Jett v. Ford Motor Co.*, 335 Or 493, 72 P3d 71 (2003). Plaintiff Trudy Jett[1] initiated the action against defendant Ford Motor Company (Ford), claiming that a delivery truck manufactured by Ford that she drove as an employee of United Parcel Service (UPS) was defective and injured her as a result of that defect. Ford countered that plaintiff's injuries were the result of her own negligence. A jury found for plaintiff, apportioning 85 percent of the fault to Ford and the remaining 15 percent to plaintiff. Ford appealed, assigning error to (1) the trial court's exclusion of portions of UPS safety rules pertaining to the safe operation of delivery trucks, (2) the trial court's "*Sandford* instruction"[2] to the jury regarding those issues that the jury could consider in assessing plaintiff's comparative fault on the product liability claim, and (3) the trial court's denial of Ford's motion for a mistrial, or alternatively, for leave to reopen its case in order to present evidence of plaintiff's "*Mary Carter* agreements"[3] with Ford's codefendants.

We reversed and remanded, concluding that the trial court had erred in excluding the UPS safety manual from evidence because such evidence is relevant to demonstrating the reasonableness of plaintiff's conduct. *Jett v. Ford Motor Company*, 183 Or App 260, 268-69, 52 P3d 441 (2002).

[1] Although both Trudy and Ron Jett are plaintiffs, this appeal involves only the conduct of Trudy Jett. Accordingly, unless otherwise indicated, when we say "plaintiff" in the singular, we refer to Trudy Jett.

[2] The instruction was a variation of the standard *Sandford* instruction, Uniform Civil Jury Instruction (UCJI) 48.09, so called because it is based on *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 598, 642 P2d 624 (1982).

[3] Plaintiff entered into an agreement with defendant Milligan Motors (Milligan) whereby Milligan gave plaintiff $75,000 in exchange for plaintiff's promise not to enforce any judgment against Milligan in excess of $250,000. Plaintiff had a similar agreement with defendant Tim Testerman (Testerman) that guaranteed recovery from Testerman of $100,000 but capped his liability at $250,000. Both defendants Milligan and Testerman remained in the case after entering into the settlement agreement. This type of settlement agreement is known generally as a *Mary Carter* agreement, after *Booth v. Mary Carter Paint Company*, 202 So 2d 8 (Fl Dist Ct App 1967). *See generally Grillo v. Burke's Paint Co.*, 275 Or 421, 425 n 1, 551 P2d 449 (1976) (citation omitted) (describing development of *Mary Carter* terminology).

We also addressed Ford's contention that the trial court had erred in delivering a *Sandford* instruction, but ultimately concluded that Ford had failed to preserve that issue. *Id.* at 269. We did not reach Ford's third assignment of error. *Id.*

On review, the Supreme Court concluded that, even if exclusion of the safety manual was error, that error was an insufficient basis for reversal. *Jett*, 335 Or at 499-501. Since Ford had been able to adduce evidence of the applicable standard of care illustrated in the safety manual through a number of other witnesses, exclusion of the safety manual did not substantially affect Ford's rights such that reversal was required under ORS 19.415(2).[4] *Id.* The Supreme Court also concluded that Ford had adequately informed the trial court as to the basis for its exception to the *Sandford* instruction, and reversed and remanded to us for consideration of Ford's remaining assignments of error. *Id.* at 502-03. We conclude that the trial court properly gave the *Sandford* instruction to the jury and did not abuse its discretion in denying Ford's motion for a mistrial. We therefore affirm.

We restate the underlying facts of the action from our original opinion:

"Plaintiff was a professional package delivery truck driver for UPS. On April 22, 1996, she reported that her regular truck was difficult to shift. Two days later, she again reported trouble with shifting. On April 29, the truck was taken in for servicing, and plaintiff was given a replacement truck. Plaintiff, however, reported that the replacement vehicle also was difficult to shift. On April 30, the individual responsible for truck maintenance and service spoke with plaintiff about the shifting problem with the replacement truck. He told plaintiff that the replacement truck was unsafe and that she should wait until later that morning to do her rounds, when her regular truck would be available.

"Plaintiff declined to wait. She loaded the replacement truck with parcels, turned on the ignition, and pulled the truck forward approximately 10 feet. Immediately, however, she encountered difficulty with the gear shift. She

---

[4] ORS 19.415 has been amended by the 2003 Legislative Assembly in a manner that does not apply to this decision. Or Laws 2003, ch 576, § 88.

moved the transmission shift lever to "neutral." She believes that she set the parking brake, because that was her usual practice. With the engine still running, she got out of the truck and walked behind it to retrieve some additional packages. While she was standing between the rear of the truck and the loading dock, the truck rolled back and pinned her against the dock, causing severe injuries."

*Jett*, 183 Or App at 263-64.

At the close of the evidence, the jury was instructed as to the issues that it could consider in assessing plaintiff's comparative fault on the product liability claim as follows:

"When considering the negligence, if any, of the plaintiff, carelessness or negligent failure to discover or guard against the product defect is not an appropriate defense and may not be considered by the jury.

"Other forms of negligent conduct by plaintiff, if any, such as unreasonableness, misuse of the product, or unreasonable use despite knowledge of the dangerous defect in the product and awareness of the risk posed by that defect may be considered by the jury."

*Id.* at 265.

We note at the outset that, in its initial appeal to this court, Ford challenged the *Sandford* instruction, not only on the basis that it was improperly given, but also on the basis that it was confusing to the jury because it was internally inconsistent and overly abstract. However, Ford does not cite, nor have we identified, any portion of the record indicating that that issue was raised at trial. Therefore, we confine our analysis to the issue as framed by the Supreme Court: whether the trial court properly gave the instruction in light of the pleadings and evidence in the action. *See Lane v. Brown*, 328 Or 42, 45 n 1, 970 P2d 206 (1998) ("An exception on one ground does not preserve the error on another ground.").

■ ■ We review jury instructions as a whole and "will reverse only if we 'can fairly say that the instruction probably created an erroneous impression of the law in the minds of the [jurors] which affected the outcome of the case.'" *Bray v. American Property Management Corp.*, 164 Or App 134, 142,

988 P2d 933 (1999), *rev den*, 330 Or 331 (2000) (quoting *Waterway Terminals v. P. S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970)). A party is entitled to a jury instruction on its theory of the case if the requested instruction correctly states the law, is based on the operative pleadings in the case, and is supported by the evidence. *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998).

■　We first consider whether the *Sandford* instruction correctly stated the law. It is a "long-established principle that a plaintiff's incidental carelessness or negligent failure to discover or guard against a product defect is not an appropriate defense" to a tort claim based on strict liability for injuries caused by a defective product. *Hernandez*, 327 Or at 109. However, other culpable conduct by a plaintiff, such as "unreasonable misuse of the product, or unreasonable use [of the product] despite knowledge of a dangerous defect * * * and awareness of the risk posed by that defect," may be asserted as a defense to a strict product liability claim. *Id.* In this case, the trial court closely followed the above-quoted language from *Hernandez* in fashioning the instruction that it gave to the jury regarding plaintiff's conduct that the jury could consider in determining her fault. As such, that instruction was a proper statement of the law.

Ford nevertheless argues that, because the trial court omitted the adjective "incidental" from the first portion of the instruction regarding "carelessness or negligent failure to discover or guard against the product defect," the instruction erroneously stated the law. That is so, argues Ford, because the adjective "incidental" necessarily denotes the type of carelessness encompassed by the language in UCJI 48.09 regarding a plaintiff's "unobservant, inattentive, ignorant or awkward" failure to discover or guard against a product defect. According to Ford, that legally erroneous instruction permitted the jury to disregard its theory that plaintiff was negligent in acting carelessly despite a knowledge of the risk to her from her delivery truck or where, as Ford asserted, the defective condition—a sticking shifter—was open and obvious.

■　We need not decide whether the omission of the adjective "incidental" carries such legal significance because

the trial court also instructed the jurors that they could consider as a defense "[o]ther forms of negligent conduct by plaintiff, if any, such as unreasonableness, misuse of the product, or unreasonable use despite knowledge of the dangerous defect in the product and awareness of the risk posed by that defect." For that reason, we reject Ford's contention that the instruction improperly permitted the jury to disregard plaintiff's voluntary assumption of risk as a defense. "Unreasonable use despite knowledge of the dangerous defect in the product and awareness of the risk posed by that defect" is an accurate statement of the voluntary assumption of risk defense available in a products liability action in Oregon. *Johnson v. Clark Equip. Co.*, 274 Or 403, 409, 547 P2d 132 (1976). Taken as a whole, the trial court's instruction indicating the sort of negligent conduct by plaintiff that the jury could—and could not—consider in assessing her fault is, therefore, a correct statement of the law.

We turn to whether the instruction was supported by the pleadings and evidence. Ford argues that the trial court erred in giving the instruction because, in asserting the affirmative defense of comparative fault, it had alleged not that plaintiff had acted negligently in failing to discover the defect but, rather, that plaintiff knew that she was supposed to act in a particular manner—according to the UPS safety manual—and had not done so. However, in her amended complaint, plaintiff set forth allegations supporting a strict products liability claim against Ford. On that basis, the instruction limiting the jury's consideration of a careless or negligent failure to discover the product's defect as a defense to the strict liability claim fell within the scope of plaintiff's operative pleadings and was proper if supported by the evidence. *Hernandez*, 327 Or at 106. We review the evidence supporting the giving of a jury instruction in the light most favorable to the party requesting the instruction. *State v. Dollar*, 181 Or App 354, 356, 45 P3d 1014 (2002).

Richard Cook, a forensic engineer, testified for plaintiff that the truck that injured her was unreasonably dangerous to users due to a design defect. That defect could lead a driver to believe mistakenly that the vehicle was in neutral when, in fact, it was either in reverse or "perched" between neutral and reverse. Cook further testified that movement,

vibrations, or warming of the vehicle could cause the transmission to shift unexpectedly into reverse from a position perched between neutral and reverse.

Larry Tompkins, a forensic engineer with more than 23 years' experience in automotive engineering, also testified as an expert witness for plaintiff. He testified that the parking brake on the delivery truck driven by plaintiff is more effective at preventing forward rather than backward movement, that it is more difficult to operate the parking brake effectively in cold weather conditions similar to those existing on the day plaintiff was injured, and that it is possible for a driver to set the parking brake so that it appears firmly set, yet is not fully engaged. Tompkins believed that plaintiff, before leaving the vehicle, had either put it in reverse with the parking brake only partially set or had set the transmission between neutral and reverse and that movement caused by plaintiff stepping from the vehicle, vibrations in the driveline caused by the running engine, or warming of the shifter cable could have caused the transmission to shift into reverse.

Plaintiff testified that the Ford delivery trucks with automatic transmissions were difficult to shift into gear when it was cold but that, once warmed up, they operated properly. The difficulty with the transmission was "an every day occurrence," common to her and her fellow drivers. Plaintiff further testified that the problems she encountered with the vehicle on the day she was injured were the same difficulties in shifting that she had experienced with other vehicles and that had also occurred in the same truck the day before she was injured. She stated that the only concern that she and the mechanic considered on the day she was injured was that she might get stranded as a result of the inability to shift the truck into park and that they did not consider the shifter a safety concern.

Plaintiff further testified that, on the day she was injured, she had partially loaded her truck, pulled away from the loading dock, and attempted to put the vehicle in park but was unable to do so. She testified that she put the vehicle into neutral, set the parking brake, and proceeded with preparations for making her deliveries. It took two to three

minutes to complete those preparations and, in that time, the vehicle did not move. She then left the truck to complete loading the vehicle and to close the truck's rear doors. While she was standing between the loading dock and her truck, she heard a click, turned, and saw the truck accelerating towards her. At that point she was pinned between the truck and the loading dock.

That evidence supported plaintiff's theory that her injuries were the result of a defective design in the transmission of the delivery truck and that any negligence on her part amounted to a mere careless or negligent failure to discover the product's defect. Because the trial court's *Sandford* instruction was a correct statement of the law and was supported by the pleadings and evidence, the trial court did not err in giving that instruction.

■     We turn to Ford's remaining assignment of error. Ford argues that the trial court erred in not granting its motion for a mistrial or, alternatively, for leave to reopen its case in order to present evidence of the settlement agreements that plaintiff had entered into with defendants Milligan and Testerman, as a remedy for plaintiff's counsel's statements in rebuttal argument urging the jury to release those defendants from liability and find fault with Ford alone. Ford argues that plaintiff's rebuttal argument prejudiced it under the apportionment of fault rules and by the fact that liability among codefendants is several only.

Plaintiff responds that Ford stipulated in a pretrial hearing that evidence of the settlement agreements would be admissible only in the event that witness testimony at trial changed from earlier testimony, which was not the case here. Furthermore, evidence of the settlement agreements could have been admitted only with a limiting instruction and for limited purposes under *Holger v. Irish*, 316 Or 402, 421-22, 851 P2d 1122 (1993). In any event, argues plaintiff, Ford's effort to present that evidence came too late and its motion for a mistrial was overly broad. We need not address the propriety of plaintiff's rebuttal argument to the jury, however, because we determine that, even if that argument was improper, it was not so prejudicial that it denied Ford a fair

trial. The trial court did not abuse its discretion in denying Ford's motion.

During rebuttal, plaintiff's counsel made the following remarks regarding apportioning fault among defendants:

"I think that the numbers that you should put in are going to be obvious. But I do want you to do something for me. I want you to send those two defendants as well as my clients back to Enterprise, Oregon, to live together knowing that [none] of them [was] responsible for what happened to her.

"So, I'll just tell you. Cut them loose. * * * I'm just telling you to cut them loose.

"This isn't Huffman's fault. It is not Testerman's fault. They were caught in the same crosshairs of the same rifle shot that the blind corporate eye fired into that crowd, and they were no more culpable or responsible for this than Trudy Jett [was].

"So I want you to come back. I want you to find Ford responsible for product defect, for negligence, and I want you to find them 100 percent, 100 percent at fault for this accident."

Plaintiff's counsel went on to conclude his rebuttal argument. Ford made no objection in the course of that argument, but waited until the close of plaintiff's rebuttal to move for a mistrial on the ground that plaintiff's counsel's suggestion that the jury release the other defendants from liability was unfair and prejudicial in light of the fact that Ford had been unable to introduce evidence of the *Mary Carter* agreements between plaintiff and defendants Milligan and Testerman. Ford alternatively moved the court for leave to reopen its case in order to present evidence of those agreements. Ford did not request a curative instruction. The trial court denied Ford's motion.

We review the denial of a motion for a mistrial for abuse of discretion. *Hogan v. Gridelli*, 129 Or App 539, 546, 879 P2d 896 (1994).

" 'Control over the argument of counsel is intrusted largely to the discretion of the trial judge. * * *

> " ' "* * * [T]he exercise of such discretion is not the subject of review, except where [counsel is] permitted to travel out of the record, or to persist in disregarding the admonitions of the trial judge, or to indulge in remarks of a material character so grossly unwarranted and improper as to be clearly injurious to the rights of the party assailed."

> " '* * * Obviously, the judge who presides over the trial, and who becomes familiar with its atmosphere, is best able to determine whether an excursion into a forbidden field is prejudicial, the extent of the injury, if any, and what remedies must be applied to undo the harm.' "

*Troutman v. Erlandson*, 279 Or 595, 605, 569 P2d 575 (1977) (citations omitted) (quoting *Kuehl v. Hamilton*, 136 Or 240, 244, 297 P 1043 (1931)). Stated another way, we will not reverse the denial of a motion for a mistrial unless we can fairly say that the impropriety that is the basis for the motion denied the adverse party a fair trial. *State v. Compton*, 333 Or 274, 293, 39 P3d 833, *cert den*, 537 US 841, 123 S Ct 165, 154 L Ed 2d 64, *reh'g den*, 537 US 1068, 123 S Ct 653, 154 L Ed 2d 559 (2002). We review rulings on motions to reopen a case in order to present additional evidence for abuse of discretion. *Lee v. Yang*, 163 Or App 520, 525, 987 P2d 519 (1999), *rev den*, 329 Or 607 (2000).

Even assuming that plaintiff's rebuttal argument was improper, we cannot say that it was so clearly injurious to Ford's right to a fair trial that the trial court abused its discretion in denying Ford's motion for a mistrial or for leave to reopen its case in order to present evidence of the *Mary Carter* agreements. Ford made no objection at the time the comments were made, nor did Ford move to strike the comments or request a curative instruction. Furthermore, the comments are contained in 20 lines of a voluminous record and were made during rebuttal, which, as the trial court instructed, the jury was not to consider as evidence in rendering its decision. Finally, Ford stipulated before trial that the *Mary Carter* agreements would be relevant only if witnesses' testimony changed from that given before trial or the settling defendants' strategy in defending against plaintiff changed from what they had pursued before the settlements.

Under those circumstances, we cannot say that plaintiff's counsel's comments denied Ford a fair trial or that the trial court abused its discretion in denying Ford's motion.

Affirmed.