Argued and submitted December 22, 2003, affirmed May 12, petition for review denied August 10, 2004 (337 Or 282)

## STATE OF OREGON,
*Respondent,*

*v.*

## DANIEL GENE CURTISS,
*Appellant.*

## C992999CR; A113339

89 P3d 1262

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant appeals his conviction for manslaughter in the second degree, ORS 163.125(1)(a), based on his driving through a construction zone on Interstate 5 (I-5) in Portland and striking a construction worker, which resulted in the worker's death.[1] Defendant sought to introduce expert testimony regarding the standards for use and placement of construction signs and markers in a construction zone and whether signs and markers at the accident scene complied with those standards. The state moved before trial to exclude the testimony from evidence at trial, and the trial court ruled that the evidence was inadmissible. Defendant assigns error to that ruling. We affirm.

Shortly before midnight on July 14, 1999, defendant drove though a construction zone and struck a worker in the head with the driver's side mirror of his vehicle. The construction project involved the striping of the northbound lanes of I-5 and required shutting down two lanes of traffic (the "fast" lane and the middle lane). There was various testimony at trial regarding the location and the existence of warning signs, markers, and other safety devices in and around the construction zone that evening. Also, defendant testified that, at the time, he "noticed they were doing striping work," that he saw a "big painting truck" in his rear view mirror, and that he noticed that "traffic was slowed down." He also testified that "there was a lot of candlestick construction cones" and that he thought that he had run over the base of one of them.

■    In granting the state's pretrial motion, the trial court reasoned, in part, as follows:

> "The examination by the fact finder in this case will be from the point of view of the defendant. That is his state of mind, that is whether he was, under the circumstances of this case, good, bad or indifferent, but the facts that actually existed out there, whether or not he was aware of and consciously disregarded a substantial and unjustifiable risk. So the facts are relevant.

---

[1] Defendant also was convicted of failure to perform the duties of a driver to injured persons under ORS 811.705. He does not challenge that conviction.

"Opinion evidence of others, though, as to whether or not this was a safe work scene, whether or not it met highway standards, requirements of the highway department, those sorts of things, are not relevant, are not probative.

"We examine this situation from the point of view of the defendant, even if it did not meet industry standards, even if the scene was not in compliance with Oregon Highway Department rules and regulations, contract specifications, even if it was an unsafe work scene, taking the facts into account, nevertheless. If the jury found that the defendant was aware of and consciously disregarded a substantial or unjustifiable risk, they could find him guilty of the crime."

We review a trial court's determination of whether evidence is relevant for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Thus, proffered evidence must be relevant to a "fact that is of consequence to the determination of the action" *id.*, or, stated differently, there must be "some rational relationship between the item of evidence offered by a litigant and the substantive issues properly provable in the case." *State v. Guzek*, 322 Or 245, 251, 906 P2d 272 (1995), *vac'd on other grounds*, 336 Or 424 (2004) (noting also that relevancy is a "relational concept that carries meaning only in context"); *see also Warren v. Baldwin*, 140 Or App 318, 328, 915 P2d 1016, *rev den*, 324 Or 229 (1996) (noting that evidence is irrelevant if it has "no logical connection to a fact or issue" (internal quotation marks omitted)).

In this case, defendant asserts that the purpose of the expert testimony was "to show what is a reasonable warning to *drivers* of the hazards that they are about to encounter" (emphasis in original) or to "show what a reasonable person in defendant's situation would have known with respect to the risks." Defendant explains,

"When a reasonable driver in the circumstances cannot see the construction zone on a highway until he is upon it—

such as was the circumstance in this case—he cannot know about lane closures and the need for reduced speed ahead, when no signs inform him that the roadway is not clear as it normally would be. Hence, a reasonable driver in those circumstances is not behaving recklessly by continuing his travel as any reasonable driver would do in normal circumstances."

The state counters that the real purpose of the evidence was to establish contributory negligence on the part of the state, an irrelevant issue because contributory negligence is not a defense to manslaughter.

As an initial matter, we agree with the state that the proffered evidence could not be offered to establish contributory negligence. In a prosecution for manslaughter, the contributory negligence of a decedent or of third parties is no defense. *See State v. Miller*, 119 Or 409, 419-20, 243 P 72, *aff'd sub nom, Miller v. State of Oregon*, 273 US 657, 47 S Ct 344, 71 L Ed 825 (1927); *State v. Newberg et al.*, 129 Or 564, 575, 278 P 568 (1929). *See also Homicide*, 40 Am Jur 2d 574 § 107 (1999) (noting that negligence of others informs only the inquiry of whether defendant was a proximate cause of the death; once that is established, defendant is criminally liable regardless of whether other parties were also responsible).

To be convicted of manslaughter in the second degree, a defendant must have acted "recklessly." ORS 163.125. In turn, ORS 161.085(9) states:

" 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Under ORS 161.085(9), "recklessness" thus requires the consideration of a defendant's awareness and conscious disregard based on the circumstances as they "exist." The phrases "aware of" and "consciously disregards," when used with the phrase "the circumstance exists," focus on a person's perception at the time that the person engages in criminal conduct.

*See Webster's Third New Int'l Dictionary* 152 (unabridged ed 1993) (defining "aware," in part as "marked by realization, perception, or knowledge : CONSCIOUS, SENSIBLE, COGNIZANT * * * showing heightened perception and ready comprehension and appreciation : INFORMED, KNOWING, ALERT"); *Id.* at 482, 655 (defining "consciously" as "in a conscious manner" and "conscious," in part, as "subjectively perceived : personally felt," "embodying consideration and decision," and "assumed, determined, treated, or executed with awareness, care, purpose, or consideration"; defining "disregard," in part, as "to give no thought to : pay no attention to"). ORS 161.085(9) also states that a person is reckless if the person is aware of a risk that a certain result "will occur." That phrase also demonstrates the statute's focus on a person's actual perception of the particular circumstances existing at the time of the alleged crime.

Defendant disagrees. He relies, in part, on *Jett v. Ford Motor Company*, 183 Or App 260, 268, 52 P3d 441 (2002), *rev'd on other grounds*, 335 Or 493 (2003), in which we held that the plaintiff's employer's safety standards were relevant to the "reasonableness of plaintiff's conduct," in particular, her percentage of fault. *Jett* was a civil case in which contributory negligence of the plaintiff was at issue, whereas, contributory negligence is not relevant to this manslaughter prosecution.[2] Moreover, unlike in *Jett*, where safety standards had a tendency to make a fact that was of consequence more or less probable, defendant did not assert that the expert testimony would establish anything about his own perception or awareness at the time of the incident, the fact of consequence here. For example, he did not claim that he was aware of applicable safety standards and that the failure of the construction zone to comply with those standards caused him to disregard the risks associated with driving through the zone. Indeed, at trial defendant testified that he was aware that construction was in progress, stating, among

---

[2] Since the briefing in this case, the Supreme Court has reversed *Jett*, holding that the exclusion of the plaintiff's employer's safety standards was not an error affecting the substantial rights of a party. The court expressly declined to consider the correctness of our holding that the safety standard evidence was relevant. *Jett v. Ford Motor Company*, 335 Or 493, 501, 72 P3d 71 (2003) (assuming exclusion of safety rules was error, the error did not substantially affect the verdict because "ample evidence in the record made the same point").

other things, that he noticed that traffic was slowed down and that "there was a lot of candlestick construction cones." Under the circumstances, the trial court did not err in excluding defendant's proffered expert testimony because it was not relevant to any issue in the case.

Affirmed.