LAGESEN, J.
*224 Defendant, while driving, collided with a road-worker who was repairing potholes along with a crew of other workers. For that conduct, a jury convicted defendant of one count of criminally negligent homicide, ORS 163.145.[1] Defendant appeals, assigning error to the trial court's exclusion as irrelevant of testimony from two expert witnesses regarding recommended traffic safety guidelines for roadworkers, and whether the roadworkers involved with the collision complied with those guidelines, as well as two illustrations depicting what a driver would have seen had the roadworkers deployed the recommended safety measures. Defendant contends that the excluded evidence was relevant to two elements of the charge against him: (1) whether defendant caused the victim's death within the meaning of ORS 163.145 and ORS 163.005,[2] and (2) whether defendant acted with "criminal negligence" under ORS 161.085(10)[3] in causing the victim's death. We review the trial court's rulings on the relevance of the evidence for errors of law, State v. Titus , 328 Or. 475, 481, 982 P.2d 1133 (1999), and for the reasons that follow, affirm.
*225 I. FACTS AND PROCEDURAL HISTORY
The facts pertinent to the issues on appeal are not in dispute. Defendant, while driving *884 his girlfriend's SUV, became distracted by the radio and did not look up at the road for about 600 feet, except to check immediately over the dashboard. At the same time, on the road ahead of defendant, a four-man road crew was patching potholes. They worked from a flatbed pickup, hopping out to fix potholes as they drove along. The pickup was marked with a beacon, flashers, and flashing hazard lights, and the workers wore bright vests. All four men on the road crew got out of the vehicle to fix two potholes.
Defendant did not see the pickup until it was too late to avoid a collision. When he saw the crew diving out of the way of his vehicle, defendant swerved to the left and slammed on the brakes. At that moment, defendant struck one of the crewmembers with his vehicle. The crewmember died as a result of the collision, and defendant was subsequently charged with criminally negligent homicide, among other crimes.
Before trial, the state moved in limine to preclude defendant from introducing evidence "related to signage and construction zone standards," arguing that it was irrelevant and inadmissible under State v. Curtiss , 193 Or. App. 348, 89 P.3d 1262, rev. den. , 337 Or. 282, 96 P.3d 347 (2004), which held that another's contributory negligence is not a defense to a charge of reckless homicide. In response, defendant argued that he should be able to introduce evidence from two experts, Thomas Fries and Scott McCanna, about the traffic safety guidelines applicable to roadworkers.[4] Generally speaking, that evidence would have shown that the road crew did not follow the recommended safety guidelines when setting up temporary traffic control devices as they worked, and that the warnings that the road crew did employ would not have *226 alerted a reasonable driver that the driver was entering a work zone. In addition, defendant also argued that he should be entitled to introduce into evidence two illustrations depicting what the road would have looked like to a driver in defendant's position had the road crew complied with the applicable traffic safety recommendations. Defendant argued that the evidence that the road crew did not comply with applicable safety guidelines, as well as the evidence about how the road would have looked had the crew complied with those guidelines, was relevant to whether his conduct caused the victim's death for purposes of the criminal homicide statutes. Defendant further argued that evidence about the deficiencies in the road crew's safety markings was probative of whether defendant's conduct was criminally negligent and, in particular, probative of whether defendant's failure to recognize that the risk of harm posed by his inattentiveness to the road was a gross deviation from the standard of care. Finally, defendant also contended that the road crew's contributory negligence should be a cognizable defense to the criminal charges against him, notwithstanding Curtiss .
The trial court ruled that evidence regarding the applicable guidelines and the road crew's failure to comply with them, evidence regarding how the road would have looked if the crew had complied with the guidelines, and evidence addressing the adequacy of the markings that the road crew did use was not relevant, and precluded defendant from introducing it. In so doing, the court relied heavily on our decision in Curtiss .
On appeal, defendant argues that the trial court erred in excluding the evidence. Although defendant acknowledges that, under Curtiss , the evidence was not relevant to show that the road crew's negligence was a contributing cause of the victim's death, defendant argues that the evidence was probative both as to whether defendant was a cause of the victim's death, and as to whether, in causing the victim's death, defendant acted "with criminal negligence," as the jury was required to find to convict him of criminally negligent homicide under ORS 163.145. The state responds that the trial court properly excluded the evidence and, alternatively, that any error was harmless.
*885 *227 II. ANALYSIS
We analyze defendant's theories of relevance in turn.
A. Causation
Defendant contends that the excluded evidence was relevant to causation. In particular, defendant contends that the evidence was relevant to show that the road crew's negligence was a sole or superseding cause of the victim's death, so as to exclude defendant's conduct as a "legal cause" of the victim's death.
That argument misapprehends the nature of the element of causation under the criminal homicide statutes. In State v. Turnidge (S059155) , 359 Or. 364, 374 P.3d 853 (2016), the Supreme Court clarified that causation under the criminal homicide statutes "means cause-in-fact." Id . at 481, 374 P.3d 853 (explaining that causation under the criminal code does not include the concept of "legal cause" or "proximate cause," and that "the only inquiry to be made by the jury, or by a court testing the evidence for sufficiency to go to the jury, is whether there is evidence from which the conduct alleged could be found to be a factual cause of injury"). Under the criminal homicide statutes, "[t]he test of causation for most circumstances is whether, 'but for' the defendant's conduct, the event would not have occurred." Id .
Here, the excluded evidence is not probative of whether defendant's conduct was a "but for" cause of the victim's death; it is undisputed that defendant hit the victim with his car, resulting in the victim's death, and the excluded evidence does not suggest otherwise.[5] As a result, the trial *228 court did not err when it concluded that the evidence about the road crew's compliance with applicable safety guidelines was not relevant to the issue of causation.
B. Criminal Negligence
Defendant alternatively argues that the evidence was relevant on the point of whether he acted "with criminal negligence" in causing the death of the victim.
A defendant acts with criminal negligence if the defendant fails "to be aware of a substantial and unjustifiable risk that the result [of the offense] will occur * * *. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10). The standard is an objective one and, for crimes that arise from a defendant's driving, the defendant's failure to be aware of the risk must constitute a gross deviation from the degree of care that a reasonable driver would observe in the situation. See id .; see also State v. Stringer , 49 Or. App. 51, 54-55, 618 P.2d 1309 (1980) (discussing standard for criminally negligent homicide resulting from car crash). Thus, in determining whether a defendant was criminally negligent in killing a person with a car, the factfinder's task is to assess whether the defendant failed to be aware of the risk that the defendant would kill the person and, if so, whether that failure represented a gross deviation from the standard of care that a reasonable driver would observe when driving under the actual conditions defendant found himself in on that day. In making that assessment, the ordinary civil negligence standard of care "provides the benchmark for determining whether the defendant's conduct was a 'gross deviation' " from the standard of care a reasonable person would observe in the same factual context.
*886 State v. Lewis , 352 Or. 626, 641, 290 P.3d 288 (2012).
Under that standard, the bulk of the excluded evidence was not relevant. As noted, the two illustrations and much of the proposed testimony by Fries and McCanna focused on the safety guidelines applicable to the road crew, and the fact that the road crew had not complied with the safety guidelines designed to alert drivers to the fact that *229 roadwork was in progress. That evidence focused on the circumstances that defendant hypothetically would have confronted had the road crew comported with applicable safety guidelines, and did not address the actual circumstances in which defendant found himself. Thus, because the standard for assessing whether a defendant driver was criminally negligent hinges on the standard of care that a reasonable driver would observe under the same factual circumstances faced by defendant, that evidence about how the road would have looked under a different set of circumstances was not relevant to the issue before the jury.
However, some of the evidence that defendant sought to introduce was relevant under that standard. Specifically, defendant sought to elicit testimony from McCanna that the warning signs that workers employed on that day-a beacon and flashing lights on the truck and safety vests-would not have adequately alerted a reasonable driver that the driver was entering a work zone. Defendant's counsel asked, "[W]ould it be reasonable, under the circumstances of this case, for a driver not to perceive that they were entering a work zone?" McCanna answered, "That they were not entering a work zone? That's-yeah, there was not enough advanced warning or advanced warning of any kind to give them that idea."
That evidence was relevant to the issue of defendant's criminal negligence because it addressed how the circumstances that defendant, in fact, confronted that day would bear on a reasonable driver's awareness of the risk that the driver would cause the death of someone. If a reasonable driver could not have seen that they were in a work zone, as McCanna would have testified, then perhaps defendant's failure to take reasonable care when driving was "merely an inadvertent breach of duty or imprudent conduct," and not a gross deviation from the standard of care. Stringer , 49 Or. App. at 54-55, 618 P.2d 1309. The trial court, therefore, erred in excluding McCanna's testimony as irrelevant to the extent that testimony addressed whether the warnings that the workers had employed would alert a reasonable driver to the risk that the driver was approaching a work zone on the roadway and, thus, workers on the roadway.
*230 The error was, however, harmless. "[W]e will affirm a conviction if there is little likelihood that the exclusion affected the verdict." State v. Hren , 237 Or. App. 605, 608, 241 P.3d 1168 (2010). In assessing the possible impact of the error on the trial, the focus is on the influence the error had on the verdict. State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003).
Here, defendant himself testified that he drove without looking at the road for a long stretch of time. That is, defendant admitted that he was not merely momentarily inattentive to the risk that he might encounter a situation where his driving would put the life of another in jeopardy. Additionally, it was largely uncontroverted that, had defendant looked forward down the road at least once during the approximately 8 seconds that elapsed between the time the road crew's truck first would had been visible to him and the time by which he needed to apply his brakes in order to stop, defendant could have avoided the accident. McCanna himself confirmed that, from his review of the case, there was nothing obstructing defendant's view of the work crew along the approximately 654 feet of roadway after the work crew would have become visible. At trial, McCanna also testified that a reasonably prudent driver would keep a look-out for bicyclists, oncoming cars, mail carriers, and disabled vehicles on that particular stretch of road. Defendant's other expert, Fries, testified that a reasonable driver would have seen the road crew:
"[THE WITNESS:] Let's cut to the chase. I'm not saying he shouldn't have seen this and responded and avoided it.
*887 "* * * * *
"THE WITNESS: I think there's plenty of visibility for that."
Under those circumstances, the exclusion of McCanna's testimony had little likelihood of affecting the jury's assessment of whether defendant's failure to be aware of the risk that he would hit the victim amounted to a gross deviation from the standard of care that a reasonable driver would exercise in the same circumstances. Given defendant's own admissions about his conduct, McCanna's *231 acknowledgement that defendant should have been keeping a look out for other roadway hazards, if not for work crews specifically, and Fries's explicit testimony that defendant should have seen the road crew and avoided the accident because there was "plenty of visibility for that," we are confident that the jury's verdict is as it should have been, notwithstanding the court's error.
III. CONCLUSION
With one harmless exception, the trial court correctly excluded as irrelevant the evidence regarding the road crew's compliance with applicable safety guidelines. We therefore affirm.
Affirmed.

Defendant was also charged with manslaughter and recklessly endangering the other workers. The jury acquitted him of those charges.

ORS 163.145(1) provides:
"A person commits the crime of criminally negligent homicide when, with criminal negligence, the person causes the death of another person."
ORS 163.005, which provides the general definition of criminal homicide, states:
"(1) A person commits criminal homicide if, without justification or excuse, the person intentionally, knowingly, recklessly or with criminal negligence causes the death of another human being.
"(2) 'Criminal homicide' is murder, manslaughter, criminally negligent homicide or aggravated vehicular homicide.
"(3) 'Human being' means a person who has been born and was alive at the time of the criminal act."

ORS 161.085(10) provides:
" 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

Defendant advanced his various arguments about the admissibility of the evidence at different stages of the case, including in a written response to the state's motion, at the pretrial hearing on the state's motion, and again at trial, when defendant renewed his efforts to introduce the evidence.

Defendant acknowledges that his conduct was a factual cause of the victim's death, but argues that the evidence is relevant to causation because, in defendant's view, the issue is whether defendant's negligence caused the victim's death, not whether defendant's conduct caused the victim's death. But, under Turnidge , causation is established if the defendant's conduct is a factual cause of the victim's death. 359 Or. at 481, 374 P.3d 853. Whether a defendant engaged in that conduct with the mental state of criminal negligence, so as to make that conduct the crime of criminally negligent homicide under ORS 163.145, is a separate question. In other words, the statute does not require the state to prove that a defendant's negligence caused the victim's death; it requires the state to prove that the defendant caused the victim's death and that, in doing so, the defendant acted with the mental state of criminal negligence, by failing to be aware of the risk of causing the victim's death in a manner that "constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."